COHEN v. WEST CHICAGO ST. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. March 6, 1894.)

No. 109.

1. HORSE AND STREET RAILROADS—NEGLIGENCE—INSTRUCTIONS.

In an action against a street-car company for injuries received by plaintiff, caused by the car starting while he was trying to get on, it is reversible error for the court, after instructing the jury that if the car stopped a reasonable length of time, and plaintiff neglected to get on till the train had started, he could not recover, to omit to charge them to the effect that, even though the car stopped a reasonable time, yet if it started suddenly and violently, while plaintiff was in the very act of getting on, the company would be liable if its employés knew or ought to have known of his presence.

2. SAME.

Where the evidence shows that the train consisted of a grip and two trailers, and that plaintiff passed the trailers and endeavored to board the grip, it is error to assume in the instructions that plaintiff might have boarded one of the trailers, where the proof does not show whether the trailers could be entered from the side of the track on which plaintiff was standing, since the burden of proving contributory negligence is on the defendant.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

Action by Hymen Cohen against the West Chicago Street-Railway Company for personal injuries. Defendant obtained judgment. Plaintiff brings error.

A. B. Chilcoat and W. P. Black, for plaintiff in error.
Wm. B. Keep, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. It is proper here to call attention to the fact that this case has been submitted without objection upon several assignments of error founded upon objections to the charge of the court, covering several pages in the record, but in reference to which no exceptions were taken on the trial of the cause. This court cannot consider exceptions not made upon the trial, but which are taken for the first time upon a motion for a new trial, or in an assignment of errors drawn up after the writ of error has been issued, and the case brought to this court for review. Exceptions to the charge of the court must be taken on the trial, before the jury retire, and, if not taken then, cannot be considered and passed upon by this court. It would .be very unfair to the trial court, as well as the opposite party, if counsel could draw up exceptions after the trial, in the privacy of his office, and, by embodying them.in a motion for a new trial and in an assignment of errors in this court, have the same benefit from them as though taken in open court on the trial of the cause. The rule is too obvious to require any citation of authorities.

The action was brought to recover damages sustained by reason of an injury to the person of the plaintiff, received while attempting to board the defendant's cars in the city of Chicago. The plaintiff charges in his declaration that on March 31, 1891, while attempting to get upon the defendant's cars upon Madison street, a little west of Halsted street, and while he was embarking, and was in the exercise of all care, and without negligence or fault, defendant caused and permitted the car upon which the plaintiff was in the act of embarking to be suddenly and violently started forward without warning or notice to the plaintiff, by which the plaintiff was thrown from the car, his right foot being caught by the car, and he dragged some 20 feet, whereby he was greatly injured, his head being badly bruised, his right shoulder bruised and sprained, the small of his back sprained, his leg broken, and internal injuries sustained. On the trial there was the conflict of testimony so often witnessed in these cases. The plaintiff testified that when he came to the corner of Madison and Halsted streets he waited for the westbound car, and when it came he gave a signal for the car to stop; that it slacked up for him to get on, and that, as soon as he got on the car with one leg, the car started, and he fell back in the middle of the street; that he was on the south side of Madison street, and that he got on the front grip, on the step; that, just as he got hold, the car started up, and he fell back; that the grip had a step running along the side of it, and he was trying to get on that step; that after he fell backward he lost consciousness, and on recovering saw a crowd of people; that the police were there, and he was taken to the county hospital; that his right leg was broken; and that he stayed at the hospital until May 7th, and then went home on crutches. On cross-examination he testified that the car stopped a minute or two before he got his foot on, but just as he was putting one foot upon the car it started. John Rosenthal, a witness for plaintiff, testified that he was sitting on one side of the car, on one of the open seats facing south, towards the direction from which the plaintiff came. Saw him attempt to get on the car. Saw him signal with something,

and the car stopped, and, before the young man got fully upon the car, the car, with full power, began to go, and the man fell down from the car, and the people began to halloo, and the car stopped a long way afterwards. That when the train started up, and the plaintiff fell off, it started off with full power. That the train had stopped about a minute, or a little more; not very long. That it did not give anybody a show to get on. Samuel Stulsoft's testimony is very similar: That he saw plaintiff give the signal to stop; that plaintiff was between the tracks at the time, and was west of Halsted and Madison about 20 feet; that the grip stopped, and the man took hold of the handle of the car, and put one foot on the car, on the step, and that then the car started, when the man had one foot on the grip; that the man fell, and there was a big alarm. Nathan Cohen testified that he saw the plaintiff step on the car, and the car just started with fair power, and he (witness) was frightened, and hallooed to the conductor, but he did not hear him; that the car dragged the plaintiff about 24 feet,—about to the alley between Halsted and Green streets; that the plaintiff was hauling himself with one hand, but could not hold on, as the train was too rapid, and he fell, and was dragged many feet. The defendant's testimony was directed to show that the plaintiff attempted to board the train while in motion, after it had left the corner of Madison and Halsted streets. John Salter, the conductor of the train, testified that there were in that train two cars and a grip. That he was on the first car back of the grip, and saw the accident. That he got to Halsted street about 10 minutes to 7 o'clock; took on passengers there; and he got the signal from the Ogden avenue car behind him to go ahead. That the whole train was west of Halsted street, and he passed the signal along, and they started up. That they took on 18 or 20 persons on the three cars at that place. That after they got started, looking south, he saw a man run between the tracks on the south side of the car. He got hold of the grip with one hand, and fell. That he then gave the emergency signal to stop. That he saw the man lying between the tracks, picked him up, and found he was hurt. That they were then near the alley, possibly 150 feet west of Halsted, about half way to Green street. That it was near the alley where the plaintiff attempted to get on. The other witnesses for defendant corroborated the testimony of the conductor.

The principal question which we are called to pass upon is whether or not the plaintiff's side of the case was fairly presented to the jury by the court in its general charge. The first assignment of error is that the charge of the court, in its entirety, is erroneous, in that it is highly argumentative, and manifestly unfair to the plaintiff. We cannot consider that question, because no proper exception was taken on the trial; and the same may be said of much that is relied upon in the third assignment of error. The only exceptions taken to the charge on the trial—and the record discloses but two—are covered by the second and third assignments of error. The second assignment of error is as follows:

"The declaration in this case alleged a right of recovery, for that the defendant caused its train of cars to be suddenly and violently started, with

a violent jerk, while the plaintiff was in the act of getting upon the grip car of said train, and when the fact that the plaintiff was so engaged in getting upon said train was known, or by the exercise of reasonable care might have been known, to the servants of the defendant in charge of said train. The evidence in the record was addressed to the support of this claim; but the entire charge ignored this ground of recovery, and the court refused to instruct the jury that if the defendant started its train while the plaintiff was in the act of getting upon its grip car, and when the defendant's servants saw the plaintiff so getting upon said train, or by the exercise of reasonable care might have so seen him, and by reason of the train so starting violently plaintiff was thrown down and injured, without negligence upon his part, then the plaintiff was entitled to recover. On the contrary, the court charged the jury in such a manner as to withdraw from the jury the consideration of, and to deny, the duty of the defendant to observe due care in starting its train, to see, by the use of all reasonable diligence, that no one was, at the time of starting the train, in the act of getting thereon."

The charge of the court was a general charge. No special instructions were asked for by plaintiff's counsel. Still it was the duty of the court fairly to present and submit to the jury the issues as they were presented by the testimony upon both sides. Each side had the right to have its case submitted to the jury as it was presented by the evidence; and if this was not done for the plaintiff, and proper exceptions were taken, he may avail himself of such exceptions, though no special instructions were asked. We are of opinion that the case made by the plaintiff was not fairly submitted to the jury, and that the exceptions taken on the trial reach this defect, because they called the attention of the court to the point during the giving of the general charge and at its conclusion. The exception taken at the close of the charge was as follows:

"Exception by plaintiff to said charge, and particularly to that part of the charge in relation to the plaintiff being able to get on some other car than the grip, and in fact that the charge did not present the right of the plaintiff to recover if the jury believed from the evidence that while the plaintiff was in the act of getting upon the car the defendant caused the same to be started suddenly, without warning, and with a violent jerk."

We think these exceptions sufficient to cover the particular points mentioned. They called the attention of the court to these defects in the presence of the jury, and gave the court an opportunity to remedy them if it felt so disposed. A better course, perhaps, would have been to have asked for special instructions, but we think it was not necessary.

The defendant's theory of the case was given to the jury over and over, to the effect that if the cars stopped a reasonable length of time for the plaintiff to get on, and he neglected the opportunity until the train had started, and then tried to get on while the cars were in motion, he could not recover. That was the defendant's case as presented by its evidence. But the plaintiff's case as made by his testimony was not fairly stated by the charge. The charge of the court seemed to go upon the theory that if the cars stopped a reasonable time, according to their schedule requirements, and the plaintiff did not embark within that time, the company could not be held for suddenly and violently, and without giving any warning, starting up the train while the plaintiff was in the act of

getting upon the cars, and while he had one foot upon the platform, and his hand on the railing. The court charged the jury that—

"It was the defendant's duty to stop cars a reasonable time to enable passengers desiring to leave the train to do so, and others desiring to board it to get on. What is reasonable time depends upon circumstances, the number of people to get off, and the number to board the train, and other matters. You are not to forget that these street cars are not operated as railroad trains are operated in the country; that is to say, their schedules do not permit them to stop so long at street crossings. They must stop at every crossing after clearing the street, and they must make their schedule time, which necessarily does not admit of long stops. The public is presumed to know this, and people are expected instantly to board the train, and those who desire to get off are expected to do so promptly. It is true, however, that it is the duty of the street-car company to stop its cars long enough to afford passengers a reasonable time to leave them, and others a reasonable time to board them. Bear in mind what I have already said to you, that it was the duty of the defendant to stop the cars a reasonable time, —long enough to afford the plaintiff and others fair opportunity to board the train. If the train stopped such a time, and then moved on, those in charge of it having no reason to believe that all who desired to board it had not done so, and the plaintiff did not take advantage of the opportunity afforded him, and attempted, for any reason, it matters not what, to go·forward, and get on the grip while it was in motion, or just when it started, he was guilty of negligence. That is to say, that if the defendant afforded the plaintiff a reasonable opportunity to board that train in safety, and he did not avail himself of it, but attempted to get on after it had started, or just as it started, the defendant was not guilty of negligence, and the plaintiff brought the injury upon himself, and cannot recover."

This is undoubtedly good law so far as it goes, and it presented the defendant's case fully and fairly. But we take it to be good law also that, though the train stopped a reasonable time for the plaintiff and others to board it in safety, and the plaintiff did not, through inadvertence or his own negligence, avail himself of the opportunity thus afforded him, still if, while the cars were yet standing, and before they were started up, the plaintiff attempted to go on board, and while so doing, and after he had placed one foot upon the platform, without further fault on his part, and before he had reasonable time or opportunity to get upon the car, and while he was thus standing with one foot on the platform and the other upon the ground, with his hand grasping the railing, in the attempt to board the train, the cars were suddenly and without any warning started up with great force and with a violent jerk, which threw him to the ground, and caused the injury, the company would be liable if those in charge of and having the management of the train knew, or in the proper discharge of their duties ought to have known, of the presence of the plaintiff. The conductor of street cars, having the safety, and even the lives, of patrons in his keeping, has not discharged his whole duty to the public when he has stopped his train and waited what may appear, according to his schedule, a reasonable time for passengers to embark. He is bound to exercise the highest degree of diligence practicable in the circumstances—all the diligence reasonably in his power—to protect passengers and prevent accident. He is bound to know, when he starts his car suddenly and with full force,

that no person attempting to embark is at that moment with one foot on the platform and the other on the ground, and with his hand upon the railing, in the act of getting on board, or is otherwise in a position of danger.

There is, we think, another error in the charge to' which exception was taken. The evidence showed that there was one car in the lead, called the "grip car," and two other cars behind, called "trailers." The plaintiff tried to board the grip car, and in doing so, it is claimed, passed by a portion of the other two cars. The court assumed in its charge to the jury that the plaintiff might have boarded either of the other two cars, and that he should have done so, because they were nearer to him. The court said:

"You will remember that the plaintiff said he was standing at or near Halsted street; that is to say, near where Madison street crosses Halsted street. It is not disputed, as I understand, that the rear of the last car had crossed Halsted street before the stop. The plaintiff testified that he was injured when he attempted to board the grip car, which was the forward car, which was certainly then some seventy feet' west of Halsted street. If the train stopped there,—and there is no dispute on that point,—why was the plaintiff trying to board the grip car, the one furtherest west? He said he stopped at the corner of Halsted and Madison to board the train when it came along. When it stopped, certainly one of the other cars must have been nearer him than the grip; and yet there is no dispute about the fact that he was injured when he attempted to board the grip. There is some evidence that he ran to get to the grip. I mention that as a circumstance. It is for you to say whether it is material. The evidence of the witnesses who stated that they saw the plaintiff apparently running past one of the cars to get to the grip is before you. Was it or not necessary, on his own statement, for him to move forward,—that is, westward,—to get on the grip? Was it or not necessary for him to pass the car next to the grip to get on the train, as the conductor of the car next to the grip said he did? Even if he was standing 15 or 20 feet 'west of Halsted street, he was certainly nearer the rear of the second car than he was to the grip car. Then why did he want to go down to the grip?"

Counsel for the plaintiff called the attention of the court to this part of the charge in these words:

"I think there will be no dispute—there was no proof made with reference to it, but I think it will not be disputed at all—that it is the custom always with these trains upon those double-track grips to keep up a gate on the trailers; in other words, to keep gates on the trailers closed on the side next the double track."

The court then remarked that it did not think there was any evidence of that kind, and did not modify the charge; and at its close, counsel, as we have seen, took exception to this portion of it. There could have been no presumption of fact, such as the court's charge proceeded upon, that the cars attached to the grip were open on the south side, so that they might have been boarded from that side by the plaintiff. There was no proof upon this point either way. This part of the charge bears upon the question of the contributory negligence of the plaintiff, and the presumptions on this question were in his favor, the burden being upon the defendant to prove such contributory negligence. We think that when the suggestion was made that it was the custom to keep the gates closed on the side next the parallel track, and exception taken to that part of the charge, as there was no proof offered on the

point, it should have been left to the jury, without assuming, as the court clearly did, that the defendant might have boarded one of the trailers, and was guilty of negligence if he failed to do so, and, instead thereof, passed by them to get upon the grip car in front. For these reasons we are of the opinion that the charge of the court in the particulars where exceptions were taken was erroneous, and that the judgment should be reversed, and a new trial granted.