## MARY J. DONOVAN *vs.* THE HARTFORD STREET RAILWAY COMPANY.

First Judicial District, Hartford, October Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In an action to recover for personal injuries, an averment in the complaint that the defendant was a common carrier of passengers is irrelevant, and may properly be stricken out by the court upon motion of the defendant, unless the other allegations of the complaint show that the relation of passenger and carrier existed between the parties at the time of injury, and that the cause of action alleged is founded thereon.

The special duty to exercise that high degree of care which is imposed by law upon a common carrier of passengers, begins only when, by coming upon his premises, or in the act of entering his vehicle, the actual relation of passenger to carrier is assumed. Until that time, although an individual may have contracted for his future transportation, the carrier owes no higher degree of care to him than to any third person.

The plaintiff, intending to take an approaching street car of the defendant, stepped out upon a cross-walk and gave the usual signal which the driver of the defendant saw and answered affirmatively. Just before the car reached the cross-walk it was unexpectedly deflected to a side track on which the plaintiff was standing, and struck and injured her. *Held* that the relation of passenger and common carrier did not exist between the plaintiff and defendant at the time of such injury.

Where the standard for the determination of the question of negligence is the conduct of a reasonable man of ordinary prudence under like circumstances, the law can apply no precise measure or rule, and the decision of the trial court thereon is one of fact, and conclusive upon this court on appeal.

[Argued October 5th—decided December 1st, 1894.]

ACTION to recover damages for personal injuries received by reason of the alleged negligence of the defendant; brought

to the City Court of Hartford and tried to the court, *Tain-tor, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

The plaintiff's complaint was as follows :—

" 1. On the 25th day of October, 1890, and for a long time previous thereto, the defendant was and had been owning and operating a horse railroad in the city of Hartford and town of Wethersfield in said county, with a line of said road located on Asylum street, in said city of Hartford, running from Main street westerly past Ford street to Woodland street."

2. (Struck out.)

" 3. The plaintiff was, on said date, at the corner of Asylum and Ford streets, in said city, within said city limits, when a car of the defendant, westward bound, running on said Asylum street, came along, and as said car approached the place where the plaintiff was awaiting the same, she gave the usual and customary signal to the servants of the defendant who were in charge of the said car, that she desired to get on board of said car.

" 4. The plaintiff at the time was at a safe distance from said tracks of the defendant on which said car should go, as to be safe for the plaintiff and convenient for her to get on board the same had it not been for the carelessness and negligence of the defendant and its said servants.

" 5. The servants of the defendant, the driver and conductor of said car, so carelessly and negligently managed and directed the same, that it was turned from the track whereon it should have gone and ran against the plaintiff with great force and violence.

" 6. By means thereof the plaintiff was struck by the car and was forced and dragged along some distance by it, and was greatly injured in the chest, sides, back, limbs, and other parts of the body, and also by tearing and injuring her clothing.

" 7. By reason of said injuries the plaintiff was ill from that time to the present and received permanent injury, and

was, and since has been compelled to expend a large sum of money for medical attendance, medicine, care, and has suffered great pain and was prevented from pursuing her trade as seamstress.

" The plaintiff claims three thousand dollars damages."

The parties entered into the following stipulation, which was part of the record:—

" It is hereby agreed by and between the above-named parties that the original complaint in the above-entitled action contained the allegation that the defendant was on October 25th, 1890, ' a common carrier of passengers by horse railroad,' which allegation was stricken out by order of the court, upon the motion of the defendant.

" This stipulation is hereby made a part of the record, to save printing the original complaint, the motion to strike out, and the decision of the court granting the motion."

The trial court found the following facts:—

" 1. On October 25th, 1890, the plaintiff resided in the city of Hartford, Conn., and the defendant, a corporation duly organized under the laws of the State of Connecticut, then owned and operated a horse railroad in said city.

" 2. A single track of the defendant's road ran on Asylum street, from Main street to a point west of Ford street, which latter runs south from Asylum street; about twenty feet east of the cross-walk across Asylum street, on the east side of Ford street, there was a switch by which cars might be turned on to a branch track running south on Ford street.

" 3. Between seven and eight o'clock in the morning of said day the plaintiff was standing on the south side of Asylum street at the corner of Ford, waiting to take a car of the defendant to go further west on Asylum street. While standing there she saw approaching from the east a car which by its color and markings indicated that it was the car she desired to take, and which was, in fact, intended to go further west on said Asylum street.

" 4. As the car came nearer, but while still at some distance from the switch, she signaled the driver with her hand, indicating her desire to get aboard the car, and he responded

by a nod, and expected to stop so that she could get on board at the cross-walk. The plaintiff advanced upon the cross-walk into the street for the purpose of taking the car.

" 5. As the car came near the switch it was going at the rate of not more than four or five miles an hour. The driver looked ahead at the switch, and saw that the tongue was correctly turned to keep the car on the Asylum street tracks, and then drove on, without paying further attention to the switch.

" 6. In some manner — presumably by the hoof of the horse drawing the car — the tongue of the switch was moved, so that the car, instead of keeping on the Asylum street tracks, was deflected to the Ford street track.

" 7. The driver at once checked his horse and applied the brake, but the car ran some thirty feet before he could bring it to a standstill, its forward end passing five or six feet beyond the west side of the said cross-walk.

" 8. The plaintiff had advanced upon this cross-walk just far enough to be struck by the forward end of the car; she grasped the top of the front fender or dashboard of the car, thus saving herself from falling, and in this position was pushed and dragged along some eight or ten feet.

" 9. Thereby her clothing was torn and injured, and she was severely bruised and shaken, and received quite severe injuries, some effects of which she has felt until the present time.

" 10. The car in question was drawn by one horse, and had a driver who had driven about three months for the defendant, and was ordinarily careful and prudent; the defendant's officers had never given him any instructions as to the rate of speed in approaching switches; there was no conductor on the car.

" 11. The switch was the one in ordinary use by horse railroads, and comprised a tongue, pivoted at one end so that the point could be moved to the right or left as occasion required; and was held in place by the friction of its own weight. Occasionally, but not frequently, it happens that this tongue is moved from its proper position by the foot of

the horse drawing the car.    When this occurs, the only way to prevent the car taking the wrong track is to come to a full stop or slow walk and examine the switch after the hind feet of the team have passed.    This precaution is not usually taken by drivers when switch is right when horse goes upon it, nor do I think that ordinary prudence requires it.

" 12. Except for this displacement of the switch the car would have passed on its course and the accident been avoided.

" 13. Upon the foregoing facts the plaintiff claimed as matter of law :—

" 1. That the fact that said switch was so placed, when the wheels of said car struck it, as to guide and turn the car · into and upon the Ford street track was in itself evidence of negligence on the part of the driver of said car, which was under his exclusive control.

" 2. That said driver was guilty of negligence when he approached said switch in not driving at a rate of speed that he could have stopped the car, and avoided the accident, if the switch was not properly placed, and that it was his duty to have looked and seen whether the switch was properly placed or not when the car struck it.

" 3. That the defendant company was guilty of negligence in not having issued any instructions to its drivers and conductors as to the rate of speed they should approach switches and curves.    That its drivers should have been instructed to approach such switches at a walk or to come to a full stop if necessary so as to avoid such an accident as occurred in this case.

" 4. That the relation of passenger and carrier between the plaintiff and defendant had begun when she was struck by said car as aforesaid.

" 5. That as the exclusive management of the horse, the car, the switch, and tracks with all their appliances and machinery was in the hands of the defendant, the proof of the accident, with no want of care on the part of the plaintiff, was *prima facie* evidence of negligence on part of defendant which was not rebutted by the facts of this case.

" But the court overruled said claims and finds that unless the foregoing facts constitute negligence, the defendant was not negligent either in the use of its appliances or in the management of the car and horse by its servant.

" The court further finds that there was no contributory negligence on the part of the plaintiff.

" TAINTOR, <i>Acting Judge.</i> "

*Roger Welles* and *Uriah Case*, for the appellant (plaintiff).

I. The court erred in striking out of the original complaint, on the motion of the defendant, the allegation that the defendant was, on October 25th, 1890, " a common carrier of passengers by horse railroad." The defendant had, by its charter, been incorporated and constituted a common carrier of passengers by horse railroad, and as such was then operating a horse railroad at the place of the accident, as alleged in the complaint. It also appears by other allegations in the complaint, that, at the time and place of the accident, the relation of carrier and passenger existed between the parties; and that the plaintiff was injured while attempting to carry out on her part, an implied contract between her and said car driver that she should take passage on said car, at that point on said Asylum street where she was struck by said car, by its having been negligently " turned from the track whereon it should have gone," as stated in the complaint.

The allegation stricken out was, therefore, a proper and legal description of the company. The forms adapted to suits of this character all contain such an allegation. Practice Book, pp. 57, 58, 59.

II. When the plaintiff was struck, the relation of carrier and passenger had begun between the parties. Booth on Street Railway Law, § 326. The company first invited the plaintiff to come and take its car at that crossing, and then struck her because she did come there, without notice or warning, thus making its branch track a trap to injure her. The company should be the last one to claim that she was not a passenger, and should not be sustained in such a claim.

*Burbridge* v. *Kansas City Cable R. R. Co.*, 36 Mo. App., 669, 683; *Sweeney* v. *Old Colony R. R.*, 10 Allen, 377; *Hulbert* v. *N. Y. Central R. R.*, 40 N. Y., 145; 2 Am. & Eng. Ency. of Law, 744. The branch track was "the carrier's premises," so that the plaintiff was injured by the carrier, on the carrier's own premises. *Snow* v. *Fitchburg R. R. Co.*, 136 Mass., 552; *Dodge* v. *Boston, etc., Stm. Co.*, 148 Mass., 207; 25 Am. & Eng. Ency. of Law, 1081, note 5; Amended Charter, 5 Pri. Laws, 493, § 9. If the plaintiff was a passenger, the defendant company was held to the highest degree of care for her safety, which was certainly not exercised in this case.

III. Under the circumstances the defendant was bound to exercise the utmost care and diligence. *Knowles* v. *Crampton*, 55 Conn., 336; *Johnson* v. *Hudson River R. R. Co.*, 20 N. Y., 65; *Davis* v. *Guilford*, 55 Conn., 351; *Schumaker* v. *St. Louis R. R. Co.*, 39 Fed. Rep., 177.

Public safety requires that car drivers in approaching switches and curves should exercise such a degree of care as to prevent such an accident as occurred in this case. If public safety requires it, the law requires it; and if the law requires it, the failure to perform such duty is negligence. *Farrell* v. *Waterbury Horse R. R. Co.*, 60 Conn., 239. The question of duty is a question of law. *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, 53 Conn., 461.

As there was here a contractual relation existing between the parties, the rule of *res ipsa loquitur* applies to this case. *Lennon* v. *Rawitzer*, 57 Conn., 587; *Carpue* v. *The London & Brighton Ry. Co.*, 5 Q. B., 747; *Le Barron* v. *East Boston Ferry Co.*, 11 Allen, 317; *Feital* v. *Middlesex R. R. Co.*, 109 Mass., 398, 405, 406; *Curtis* v. *R. & S. R. R. Co.*, 18 N. Y., 534, 541; *Edgerton* v. *N. Y. & H. R. R. Co.*, 39 id., 227, 229. This presumption of negligence has been applied to cases of derailment of cars. 2 Am. & Eng. Ency. of Law, 709, note 7. The defendants in this case have not shown "that the accident happened without fault on their part."

IV. The defendant was negligent in not issuing proper instructions to its drivers and conductors as to the rate of

speed allowable in approaching switches and curves. The company knew this switch was only "held in place by the friction of its own weight." They knew that its weight would be but a trifling obstacle to its displacement. They knew that in fact it was "occasionally" displaced by their own horses drawing the cars, but they took no precaution to remedy the evil till after this accident.

*Lucius F. Robinson*, for the appellee (defendant).

I. The court below properly struck out from the complaint the allegation that the defendant was a common carrier of passengers. 1. The complaint did not allege that "the rela-. tion of carrier and passenger existed between the parties." 2. The complaint did not allege that "the plaintiff was attempting to carry out an implied contract between her and the car-driver." 3. The complaint does not in any way, either directly or by implication, allege that the plaintiff was a passenger, or that the relation of carrier and passenger existed between the parties.

II. The claim that the relation of carrier and passenger existed between the parties when the plaintiff was injured cannot be maintained. Not until the car had stopped in response to a signal and for the purpose of accepting a person as a passenger, and until the person is attempting to get on, does he become a passenger. *Smith* v. *St. Paul etc.*, *Co.*, 16 A. & E. R. Cases, 310, 32 Minn. 1 ; *Brien* v. *Bennett*, 8 C. & P., 724; 41 A. & E. R. Cases, 63, note ; Shearman and Redfield on Negligence, § 262, *et* n. 2. The plaintiff's desire and the car-driver's expectation did not make the plaintiff a passenger nor constitute a contract of carriage. The street is in no sense a passenger station for the safety of which the company is responsible. Booth on Street Railway Law, § 326 ; *Platt* v. *Forty-Second St.*, *etc.*, 2 Hun, 124, *et* n. 3.

III. The ruling of the court below, upon the plaintiff's claim that she established a *prima facie* case of negligence by proving the accident without contribution, gives her no ground for appeal.

The court properly overruled the claim. *Button* v. *Frink*, 51 Conn., 342, 351 ; *Gibbons* v. *Wilkes Barre R. R. Co.*, 56 A. & E. R. Cases, 602, 155 Penn. St., 279 ; Booth on Street Railway Law, §§ 323, 361; Patterson's R. Acc. Law, p. 438.

The court's ruling did not prejudice the plaintiff and is not material, as the final determination of the question of negligence necessarily rested upon an examination of all the facts. A *prima facie* case is useful in the absence of other testimony, but it retires from its office when the facts are exhaustively considered.

IV. The facts as found by the court below do not constitute negligence. The switch, which was placed to direct the car up Asylum street, was turned by an accident unusual, not to be anticipated, and not imputable to the defendant. *White* v. *Milwaukee R. R. Co.*, 18 A. & E. R. Cases, 213 ; 61 Wisconsin, 536 ; *Carter* v. *Kansas City R. R. Co.*, 42 Fed. Rep. 37 ; Booth on Street Railway Law, § 332. The speed of the car, not exceeding the pace of a man on a quick walk, was not sufficient to constitute negligence. 23 A. & E. Ency. of Law, 1022, note 1. The act or omission of the company in issuing instructions as to the rate of speed is immaterial, as the car was not driven at a rate sufficient to constitute negligence. Moreover, the claim of negligence arising from such omission cannot be properly raised in the court below, nor upon appeal, since there is no allegation in the complaint to sustain it. No negligence can be imputed to the defendant because of the appliances in use. 1. Because no allegation to that effect is made, and 2. Because they were the usual, and so far as appears, the only ones in use. *Unger* v. *42d St. R. Co.*, 51 N. Y., 497 ; *Carter* v. *Kansas City R. Co.*, 42 Fed. Rep., 37. Running a car off the track, a possible and not uncommon contingency, constitutes no negligence. *Altreuter* v. *Hudson River R. R. Co.*, 2 E. D. Smith (N. Y.), 151 ; 23 A. & E. Ency., 1031, n. ; *Macomber* v. *Nichols*, 34 Mich., 212 ; *Hazel* v. *Peoples Passenger R. R. Co.*, 132 Pa. St., 96 ; 43 A. & E. R. Cases, 400 ; *White* v. *Milwaukee R. Co.*, 18 A. & E. R. Cases, 213, 61 Wis., 536. Running a car upon the wrong track does not con-

stitute negligence. *Altreuter* v. *R. Co., supra ;* 23 A. &
E. Ency. of Law, 1031, n. The company had a clear right
to run its car on either track, and, as against pedestrians
or other vehicles, had a superior right upon its own tracks.
See Booth on Street Railway Law § 303 ; 19 A. & E. R.
Cases, 127, n. Street railway companies are liable for in-
juries to pedestrians as a vehicle is and in no other degree,
and are held to ordinary care only. *Baltimore City R. Co.*
v. *MacDonald*, 43 Md., 534, 553 ; *Unger* v. 42*d St. R. Co.*, 51
N. Y. 497 ; *Fath* v. *Tower Grove, etc., R. Co.*, 13 L. R. A., 74 ;
Booth on Street Railway Law, § 309 ; *Pitcher v. R. Co.*, 154
Pa. St., 560 ; 51 A. & E. R. Cases, 192, note ; 23 A. & E. Ency.
of Law, 1019.

V. The plaintiff's case has no standing in court because
the question of the negligence involved is manifestly a pure
question of fact for the determination of the trial judge or
jury. *McDonough* v. *Metropolitan R. Co.*, 137 Mass., 210 ;
*Farrell* v. *Waterbury Horse R. Co.*, 60 Conn., 239 ; *O'Neil* v.
*East Windsor*, 63 id., 154. Whether the driver was negli-
gent in the management of the car under the peculiar and
unusual circumstances of this case is a question measured
by no standard fixed by law, but by the standard of the con-
duct of a reasonable man of ordinary prudence. 51 A. & E.
R. R. Cases, 193, n. Whether the fact that the switch was
turned in a particular manner involved negligence, is a ques-
tion which cannot be measured by any standard of negligence
fixed by law. *R. R. Co.* v. *Stout*, 17 Wall., 657 ; Beach on
Contributory Negligence, § 163. Where the standard of
negligence involved is not prescribed by law, but rests on
the particular facts, and is to be settled for the occasion by
the exercise of human judgment upon those facts, the ques-
tion is one of fact and not of law. As the court below did
not impose upon the plaintiff any duty whatever, nor absolve
the defendant from any duty which the law required of it,
nor in any respect violate any rule or principle of law, this
court will not review its conclusion. *Williams* v. *Clinton*,
28 Conn., 264 ; *Daniels* v. *Saybrook*, 34 id., 377 ; *Congdon* v.
*Norwich*, 37 id., 414 ; *Young* v. *New Haven*, 39 id., 435 ;

*Brennan* v. *R. R. Co.*, 45 id., 284; *Dexter* v. *McCready*, 54 id., 171; *Fiske* v. *Forsythe*, 57 id., 119; *Farrell* v. *Waterbury R. R. Co.*, 60 id., 239, 257; *O'Neil* v. *East Windsor*, 63 id., 154.

FENN, J.   The plaintiff's first reason of appeal is that the " court erred in striking out of the original complaint on the motion of the defendant the allegation that the defendant was on October 25, 1890, a ' common carrier of passengers by horse railroad,' because it appears by other allegations in the complaint, that at the time and place of the accident, the relation of carrier and passenger existed between the parties, and that the plaintiff was injured while attempting to carry out, on her part, an implied contract between her and said car driver, that she should take passage on said car, at that point on said Asylum street, where she was struck by said car, by its having been negligently turned from the track whereon it should have gone."

The plaintiff thus, it will be seen, bases her claim of error upon the concession of that which is manifestly true, namely, that the action of the court of which she complains could injure her only in case the other allegations of the complaint showed that the relation of carrier and passenger existed, at the time of the injury, between the defendant and herself.   In other words, the statement that the defendant was a common carrier of passengers would be irrelevant in a complaint for personal injury, unless such complaint contained other statements showing that the person injured sustained such a relation to such common carrier, as conferred the right, by reason thereof, and in no other way, to recover damages for such injury in an action based on contract for failure to perform an implied promise, or in tort for the breach of an imposed duty.   *McElroy et ux.* v. *Nashua & Lowell Railroad Co.*, 4 Cush., 400, 403; *Eaton* v. *Boston & Lowell R. R. Co.*, 11 Allen, 500; Buswell, Personal Injuries, § 5.

Our first inquiry, therefore, is, does the complaint in this case contain such allegations?   The gist of the averments in reference to the injury is, not that the plaintiff was hurt,

either while riding upon the car of the defendant, or while in the act of getting on or off of such car. It is not even alleged that at the time of the injury the plaintiff was upon premises lawfully in the occupation or control of the defendant; but the statement is that the injury occurred while the plaintiff was at a safe distance from the track on which the car should go, a place safe for the plaintiff and convenient for her to get on board. It would seem from the complaint that the place where she awaited the car was the same from which she gave the signal that she desired to get on board —a signal which we are asked to infer was seen and recognized, although the complaint fails to aver that fact.

Again, the injury is not alleged to have been received by reason of the failure of the defendant's servants to acknowledge or respond to, or to comply with, the signal of the plaintiff; nor that they failed to use proper endeavors to stop, or in fact to stop, as soon as they should have done, in order to receive the plaintiff on board, at the place desired by her; but the allegation is that the car while going was so carelessly and negligently managed and directed as to turn from the track where it should have gone, and ran against the plaintiff. Now it is manifest that here is no allegation of a cause of action growing out of the relation of carrier and passenger, in express terms, and according to the rules of pleading, which require direct statements, and exclude those by way of argument or inference merely, which demand the averment of ultimate and issuable, not of probative or evidential, facts. While, therefore, what the plaintiff's counsel say in their brief, referring to the Connecticut Practice Act, pages 57, 58, 59, is correct, namely, that "the forms adapted to suits of this character all contain the allegation that the defendant was a common carrier," it is equally true that they all contain also other allegations making such averment relevant, showing a contract, undertaking or duty; or a liability of the defendant to the plaintiff, growing out of the relation of the parties, which is here utterly wanting, so far as any direct or positive statement is concerned.

But more than this, the facts stated in this complaint are

not such as even indirectly, and by way of evidence or inference, tend to indicate, either the existence of the relation of carrier and passenger between the parties, or, if we were to assume such relation, that the cause of action was in any way founded upon it. The negligence relied on was such as might just as well arise in any case where two persons were using the public street, each lawfully, but each independent of the other, and of course in any such case it would not matter that one of such persons was a common carrier. Even if it could be held—and no case we think can be found anywhere that would be a precedent for the ruling—that the defendant was under a special duty imposed upon it by law, to stop its car so as to safely receive the plaintiff as a passenger, there is, as we have seen, nothing in the complaint adapted to recovery for a breach of such duty. It was not in fact claimed that any injury was so received, but instead it was claimed, in argument, that if the car had stopped before entering upon the switch, and before reaching the place where it would be necessary, in order to have taken the plaintiff on board, the deflection might have been prevented. Evidence, therefore, of an injury by failure to stop to allow the plaintiff to get on board would not have been admissible. *Shepard* v. *N. H. & N. Co.*, 45 Conn., 54. "Under the Practice Act, the right to recover rests upon and is limited by the facts alleged in the complaint." LOOMIS, J., in *Powers* v. *Mulvey*, 51 Conn., 432.

But without further discussion of this matter it must, we think, be evident that the ruling of the court could in no way have injured the plaintiff, provided, notwithstanding such ruling, the facts as to the situation of the parties were fully found, as they appear and are conceded to be, and that such facts show that such relation of carrier and passenger did not exist at the time when the plaintiff was struck by the car. We think they do so show; for while perhaps more favorable to the plaintiff's contention on this point than the allegations of the complaint—since it appeared in evidence that the driver did see, and responded to the plaintiff's signal; that he expected to stop for her to get on board, and

that she advanced upon the cross-walk for that purpose— such facts are not sufficient to establish the relation. *Creamer* v. *West End St. R'y Co.*, 156 Mass., 320; *Platt* v. *Forty-second St. & Grand St. Ferry R. R. Co.*, 2 Hun, 124; Booth, Street Railways, § 326.

A common carrier is bound to exercise a high degree of care towards those who have put themselves under his care as passengers; but not until they have thus put themselves under his care. Up to that time, although they may have contracted with him for their future transportation, he owes no more care to them than to any third party. His special duty begins when, by coming upon his premises, or in the act of entering his vehicle, the actual relation of passenger to carrier is assumed.

We therefore think the plaintiff was not injured by the action of the court, in this regard. Indeed, upon the facts alleged and shown, the court was bound, without this averment, (therefore unnecessary by the rules of both common law and code pleading) to take judicial notice that the defendant was a common carrier of passengers, if such fact was relevant. Special Laws of Conn., Vol. 5, pp. 306, 492; General Statutes § 1087.

The second reason of appeal is that the court erred in not holding, upon the facts found, that the defendant was guilty of negligence in not avoiding the deflection of its car from its Asylum street track to and upon its branch track, which deflection caused the injury to the plaintiff. We think it clear that whether there was negligence in this respect must, under the exceptional circumstances of the case, be regarded as a question which can be determined by no standard save that of the conduct of a reasonable man of ordinary prudence under like circumstances; that is to say, the law can apply no precise measure or rule, and therefore the inquiry is one of fact, in regard to which the determination of the trial court is conclusive. *Farrell* v. *Waterbury Horse R. R. Co.*, 60 Conn., 239; *Fritts* v. *N. Y. & N. E. R. R. Co.*, 62 id., 503; *O'Neil* v. *Town of East Windsor*, 63 id., 154.

The remaining reason of appeal alleges error in overruling

the plaintiff's claims of law, upon the facts found; restating thus, in effect, the ground of the previous reason, adding, however, the claim that, it being found that there was no contributory negligence on the part of the plaintiff, the proof of the accident was *prima facie* evidence of negligence, on the part of the defendant, which was not rebutted by the facts of the case. We think the law is otherwise. *Button* v. *Frink*, 51 Conn., 342, 351; *Lennon* v. *Rawitzer*, 57 Conn., 583, 587.

There is no error in the judgment complained of.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.

HAMERSLEY, J. (dissenting). I cannot concur in the conclusion reached by a majority of the court.

*First:* The complaint as originally drawn alleged that the defendant was at the time of the accident a common carrier of passengers by horse railroad, and that the plaintiff had then occasion to take passage on one of the cars of the defendant, of the color and kind usually run on said line westward at said Ford street; that the plaintiff at said time was at the corner of Asylum and Ford streets, when a car of the defendant, westward bound, approached the place where the plaintiff was awaiting the same; that she gave to the servants of the defendant in charge of said car the usual and customary signal that she wished to board the car; that the plaintiff was then at a distance from the tracks of the defendant on which said car should go such as to render it safe for the plaintiff, and convenient for her to get on board the same, had it not been for the carelessness and negligence of the defendant and its said servants; that said servants so carelessly and negligently managed and directed said car that it turned from the track where it should have gone and ran against the plaintiff with great force and violence; that by means thereof the plaintiff was injured, etc.

Upon motion of the defendant the court ordered the allegation that "the defendant at the time of the accident was

a common carrier of passengers by horse railroad, and that the plaintiff had then occasion to take passage on one of the cars of the defendant of the color and kind usually run on said line westward at Ford street," to be stricken from the complaint. This was error.

It is evident the allegations expunged relate to the very gist of the plaintiff's special cause of action. She was not seeking redress on account of negligence in the driver of a private carriage, or of an express cart. The negligence relied on was not such as might arise where two persons are using the public street each independent of and under no special duty towards the other; it was the negligence involved in the performance of the duty imposed by law upon a common carrier of passengers, being a street railroad corporation, towards a person having occasion to use a car of that company and having duly signified a desire to use that car, and approaching the car with the knowledge of its driver for the purpose of entering the same. The fact that the defendant was running the car in question as a common carrier of passengers, and that the plaintiff was exercising her legal right to approach and enter this car as a passenger, with the knowledge of the defendant, constituted material facts on which the pleader relied. The conditions of an injury, the special relations of the persons at the time of the injury, and their special rights and duties towards each other, are material facts on which the pleader has a right to rely in an action based on injury from negligence. In granting the motion to expunge, the court necessarily ruled that the fact that the injury was caused while the plaintiff was in the exercise of her legal right to approach and enter the car, and while the defendant was under a special duty imposed upon it by law, to stop its car so as safely to receive the plaintiff as a passenger, could not be treated as a part of the transaction proper to be considered in determining what care was actually exercised by the defendant, but was wholly immaterial to the plaintiff's cause of action. I think such ruling was material error.

It was suggested in argument that the allegation was im-

material because the complaint did not directly allege that
" the relation of carrier and passenger existed between the
parties, and that the contract relation of carrier and passenger
could not be inferred from the other facts alleged." This
assumes that the allegation was material only as introductory
to an allegation of the contract relation of carrier and pas-
senger. This assumption is not true. The allegation was
material as supporting the duty implied by law from the fact
alleged, viz : the duty to stop its car at the place mentioned,
and with the care proper to enable a person who had started
to board the car in the manner alleged, to do so safely.
That such duty is imposed on the corporation as a corollary
to the special privileges granted it, seems clear. Whether
the obligations of that duty are analogous to, or the same
as, the obligations involved in the contract relation of car-
rier and passenger is immaterial to the question in hand ;
and it is therefore immaterial whether such contract relation
may begin when a waiting passenger demands passage and
his demand is acquiesced in by the defendant, or must be
postponed a few seconds until the passenger's hand or foot
is brought in actual contact with the car.

It was also claimed that such error is not material because
the court did in fact take judicial notice of the defendant's
being a common carrier of passengers, and did receive all
the evidence which the plaintiff could introduce under the
allegations expunged. It seems to me that the same erro-
neous view of the law that induced the court to strike out
the allegation, entered into the finding of the court on the
question of negligence, and injuriously affected the interests
of the plaintiff ; and is therefore sufficient ground for a
new trial.

*Second :* The conclusion drawn by the court from the facts
found is an erroneous conclusion of law which this court
can properly review. If the fact of negligence hinged only
on the prudence shown by this particular driver, in the per-
formance of an individual duty definable only in connection
with the special emergency of this one case, the finding by
the trial court of no negligence might be conclusive ; but

the fact of negligence hinges wholly upon a ruling on two questions presented by the ascertained and admitted facts spread upon the record.

1. Was it the duty of the defendant corporation to adopt the precaution mentioned, and bring its cars to a stop at the place specified, in order to take on passengers who are there standing for the purpose of boarding the cars in pursuance of demand for passage made by the passengers and accepted by the conductors of the cars. 2. Was it the duty of the defendant corporation to adopt such precaution for the purpose of preventing the unexpected deflection of its cars from their proper and apparent course at a cross-walk on a crowded street; an accident, always involving danger, which occasionally happens at this place.

The court below ruled that such was not the duty of the defendant, because in the opinion of the court the adoption of such precaution was not required by ordinary prudence. In this ruling I think the court erred; and fail to see how there can be any doubt but that ordinary prudence does require the taking of such precaution. The opinion of the majority of the court, however, rests on the assumption that no matter how clear it may be that the court below erred, its action cannot be reviewed because the wrong conclusion is an erroneous inference of fact, and not an erroneous ruling or "decision upon a question of law arising in the trial." I cannot come to such conclusion.

It is unnecessary to attempt a reconciliation of the apparently conflicting results, and more conflicting *dicta*, to be found in our decisions on the question of negligence as one of fact or law. I doubt if consistency is possible until we recognize the fact that the arbitrary rule (which is the rule of ancient practice changed into an absolute mandate by the constitutional provision that the right of trial by jury shall remain inviolate) which protects the province of the jury from the interference of a judge in a jury trial is inherently incapable of full application to court trials, and ought not to be conclusive when we are called upon in trials to the court to distinguish those inferences which are produced in whole

or in part by weighing evidence and the credit to be given witnesses and so are inferences of fact whose settlement by the trial court is final; from those inferences which are drawn solely from facts specifically found, in producing which facts the evidence has exhausted itself and left nothing for the court but to draw its inference in the exercise of its legal judgment from the facts it has found, and so are inferences of law which can be reviewed by a court of errors. *Hayden* v. *Allyn*, 55 Conn., 289. This attempt is unnecessary because the inference of the court below which determined its judgment is wholly based on the court's definition of a legal public duty arising from ascertained conditions affecting the general public, and such definition, in trials to the court, has repeatedly been held by this court to be a question of law. Negligence as a fact may depend on the degree of prudence exercised by an individual in a special emergency, or it may depend on the existence of a duty to the public assumed by a corporation in accepting its charter and exercising the privileges granted thereby. In the latter case, where the facts are admitted, we have uniformly regarded the question of negligence as one of law. The right to occupy the streets of a city given to a railroad corporation, clearly involves a legal duty to use such simple and appropriate precautions as will minimize the danger to the public caused by such occupation; and whether a particular precaution comes within that duty may be a question of law. And so in this case, when the ascertained facts clearly established the danger— that of a car suddenly diverted from its course without notice to the occupants of a crowded street, and in such manner as to so deceive a careful person that he cannot avoid collision; the remedy—a simple and appropriate precaution in no way onerous, involving for the defendant no delay or trouble that is not a necessary incident to the use of its appliances; and the failure to adopt that remedy — the inference of a trial judge that such failure was not a violation of legal duty is a ruling or "decision upon a question of law" which this court should review.

In *Farrell* v. *Waterbury*, 60 Conn., 255, we held that no

general rule has yet been formulated, the application of which will determine with certainty in every case, whether the inference as to negligence to be drawn from ascertained facts is one of fact or law. But the instances are many where a particular rule has been laid down, when the inference of negligence depends on the question of legal duty; and in that case the following cases in support of such particular rule were cited. *Gallagher* v. *N. Y. & N. E. R. R. Co.*, 57 Conn., 446; *Dyson* v. *N. Y. & N. E. R. R. Co.*, 57 id., 9; *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, 53 id., 461; *Beardsley* v. *City of Hartford*, 50 id., 529. In *Gallagher* v. *N. Y. & N. E. R. R. Co.*, the duty of a railroad company to build a fence in a particular place was held to be a question of law, and the court says: "For these reasons we conclude that the defendant was under no duty to fence the road at the place in question, and so the entire foundation on which the trial court predicated the finding of negligence fails, and the judgment was erroneous." In *Dyson* v. *N. Y. & N. E. R. R. Co.*, the duty of a railroad to slacken speed at a particular place is held to be a question of law. In *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, the duty to slacken speed is held to be a question of law; as also the duty to build a fence in a particular place under particular circumstances; and the right of this court, in a case of negligence, to determine as a question of law, whether the facts stated disclose any duty which the defendant owed to the plaintiff and which was neglected, is distinctly affirmed. In *Beardsley* v. *City of Hartford*, a finding of negligence by Judge BEARDSLEY was overruled, because the finding involved an erroneous view of the duty of the city to take a certain precaution against danger in a highway at the place and under the circumstances stated in the finding.

To treat the determination under fixed conditions, of the legal duty of individuals or corporations, especially a duty that arises from considerations of public policy, as a question of fact to be finally settled in each case by a trial court, involves the surrender by this court of a most important juris-

diction, vital alike to the protection of individual rights and corporate interests.

The refusal to review this judgment involves such a surrender. The record is conclusive that the judgment is based on an erroneous view of the defendant's duty under the conditions found and stated. There was no question of adequacy of performance; there was no question of the exercise of ordinary prudence in the face of sudden and peculiar emergency and of conflicting considerations that might affect one in such emergency; the conclusive and sole inference on which the judgment is based is one that decides whether under the ascertained and constantly recurring conditions found, the legal duty of the defendant requires it to take the precaution specified. This plainly appears from the finding. The injury occurred from the sudden swinging of a car from its proper track in a manner so unexpected as to strike and seriously injure the plaintiff lawfully in the street, and exercising all due caution, and also in the exercise of a legal right to enter the car in pursuance of an agreement between her and the conductor. This deflection of the car was caused by the defendant, in the use of its own appliances. The court finds that such accident "occasionally but not frequently happens," and that the only way to prevent the accident is for the driver of a car approaching the switch to " come to a full stop or slow walk, and examine the switch after the hind feet of the team have passed." Upon these facts the plaintiff claimed as a matter of law that it was the duty of the defendant to instruct its servants " to approach such switches at a walk or to come to a full stop if necessary so as to avoid such an accident," and that it was the duty of the defendant's servant in this case " to have looked and seen whether the switch was properly placed or not when the car struck it." Upon this claim of law the court held that the legal duty of the defendant did not require it to take such precaution, and, after finding that this precaution is not usually taken by drivers, said, "nor do I think ordinary prudence requires it." Whether ordinary prudence requires the defendant to use such a precaution

in the fulfillment of its duty to use its appliances in the public street so as to avoid all unnecessary danger to the public, is not a question of fact for a car driver to pass upon in the first instance and a trial court to finally determine; but a question of legal duty involving grave considerations of public policy, whose determination by a trial court can be reviewed by this court.

The precaution was a reasonable and simple one, necessary to avoid occasional accidents which might prove dangerous. It was the legal duty of the defendant to adopt such a precaution.