## FELS v. EAST ST. LOUIS & S. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. September 3, 1921. Rehearing Denied December 16, 1921.)

### No. 5731.

1. **Evidence ⬌147—Testimony of various car men that they did not see plaintiff attempt to board street car held admissible.**

   Where, in an action for personal injuries occasioned by attempting to board a street car, the particular car had not been identified, it was permissible for defendant to call the motormen and conductors on cars that had passed the place of injury at or near the time thereof, to testify that they did not see the plaintiff, and knew nothing about the accident.

2. **Carriers ⬌233—Relation of passenger depends on contract.**

   The relation of passenger and carrier depends on contract, express or implied.

3. **Carriers ⬌247(3)—Plaintiff, who ran after car and seized it as it started, not a passenger.**

   The relation of carrier and passenger was not created, where plaintiff was not waiting for the car which stopped, but was running after it, and seized the handle bar just as the car was starting.

4. **Appeal and error ⬌1068(3)—Plaintiff not entitled to recover held not harmed by instructions.**

   Where there was no proof sustaining finding of relation of carrier and passenger in plaintiff's action for injuries as a passenger, question of error in the instructions was immaterial.

   Cotteral, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by Raphael Fels against the East St. Louis & Suburban Railway Company, a corporation of the state of Illinois. Judgment for defendant, and plaintiff brings error. Affirmed.

Shepard Barclay, of St. Louis, Mo. (Louis J. Portner, of St. Louis, Mo., on the brief), for plaintiff in error.

Robert A. Holland, Jr., of St. Louis, Mo. (Thomas G. Rutledge and J. M. Lashly, all of St. Louis, Mo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and LEWIS and COTTERAL, District Judges.

LEWIS, District Judge. This action was brought to recover damages for personal injuries received by Fels while he was attempting to get aboard one of defendant's street cars, caused, as he alleged, by the sudden starting of the car. There was verdict and judgment against him. He saw one or two persons standing at a street crossing in East St. Louis as if they were waiting for an approaching car, and believing it would stop he ran to catch it. It did stop and those who were waiting got aboard. As Fels ran in the direction the car was going he left the sidewalk and went into the street and the car passed him, so that he was behind it when it stopped. But he continued to run and

seized the handle at the entrance which was on the side of the car near its rear end, with one hand, as it was about to start, or after it had started, was thrown violently to the ground by the motion of the car, and received the injuries of which he complains and for which the jury by its verdict found the defendant not liable.

[1] There was no evidence that Fels was seen by the conductor or motorman on the car. The car was not identified, it went on, and it negatively appears that Fels was not seen by them. The defendant met the point by calling the motormen and conductors on three cars that passed nearest the time fixed by Fels as the time when the accident occurred. Each of them testified that he did not see Fels and knew nothing about the accident. These cars followed each other at intervals of fifteen minutes on regular schedule. Fels objected to the motormen and conductors on the three cars testifying, and assigns as error the action of the court in permitting them to do so. This contention seems to be wholly without merit. Apparently it was the only way open to the defendant to show, negatively though it be, that the motorman and conductor did not see Fels and did not know that he desired to take passage or that he had attempted to do so. The other errors assigned and relied on relate to the giving of instructions and refusal to give others.

All of the facts describing the occurrence, including those already stated, were obtained from Fels and his two witnesses, the latter looking on at some distance from the car. He testified that he saw but one waiting passenger who got aboard while he was thirty or forty feet away, that the car did not start until he had run that distance, that he was running right next to the track.

"When I got there I just got hold of the handle bar and was coming up with my foot, and that is as far as I know. I fell; they throwed me over, and the car went on. * * * I grabbed the handle of the car and was coming up with my foot, but whether I got my foot on the steps or not I don't know. * * * I never got on there, I don't think. * * * There is a bruised place on my leg here which must have struck the step."

One of his witnesses testified that two persons boarded the car, that the car was standing still when Mr. Fels got hold of the handle bar, that when the last passenger got on the car Fels was five or six feet away, still running after it, and the car seemed to start just as Fels got hold of the handle bar. The other one, that only one person boarded the car, that Fels came down the road running and grabbed hold of the right handle bar, and just as he did he fell flat to the ground.

"He grabbed and got hold of the right handle bar, and I couldn't say now whether his foot was on or not, but down he went. * * * Q. And then you say just as he grabbed it the car started and he fell, is that right? A. Yes, sir."

It thus appears that when the car stopped Fels was not waiting to enter it, was thirty or forty feet behind it and running to catch it, and did not reach the entrance at the side of the car until it was starting, or an instant before that, and that no one in charge of the car saw him. He must have come up to the entrance suddenly and grabbed the handle bar hurriedly, and was instantly thrown down, before he could

get his foot on the step. The situation thus presented induced the court to state in its charge the principles of law applicable to the relation of carrier and passenger, and the duty of the former to the latter.

[2] Was there any evidence, allowing to it every reasonable inference favorable to plaintiff that could be drawn, on which the issue of fact thus submitted could rest? We think not. The place of the accident was not at a station maintained by the defendant for the reception and discharge of passengers, but at a street crossing on a public thorofare. We appreciate the difficulty under such circumstances in determining when the relation of carrier and passenger begins, and what acts of the parties are sufficient to create it, as was pointed out in Schepers v. Union Depot R. Co., 29 S. W. 712, 126 Mo. 665. But it was there said, in recognition of the general rule:

"Yet one test applies alike to all, and that is, the relation can only be created by contract between the parties, express or implied. There must always be an offer and request to be carried on one side, and an acceptance on the other."

The principle is stated again in Purple v. Railway Co., 114 Fed. 123, 51 C. C. A. 564, 57 L. R. A. 700, in this way:

"A contract is indispensable to the relation of carrier and passenger. * * * This contract of carriage may, it is true, be express or implied, but if it does not exist in either form the relation of carrier and passenger cannot have been created."

And in O'Mara v. Transit Co., 102 Mo. App. 202, 76 S. W. 680:

"The right of a person to carriage as a passenger on a street car rests on a contract, the essential ingredients of which are that the person must signify his intention to take passage, either by words or conduct, and the car men must assent, by words or conduct, to his becoming a passenger."

[3, 4] We are not unmindful that it does not take much to raise the implied contract, and that about all street car travel is under obligations of that sort; and so it is contended that the stopping of the car was an offer to receive all persons who wished to get aboard as passengers, and that Fels accepted the offer by grabbing on to the handle bar for that purpose before the car started, and was injured while trying to enter; and that thus he brought his case within the principle stated. The contention could not be refuted if Fels had been waiting where the car stopped, or had presented himself at the entrance before the motorman was signaled to start, or if the conductor had known before he signaled to start that Fels was approaching the entrance nearby with the intention of getting aboard, or by the exercise of a vigilant outlook could have discovered that fact,—and thus in plain view or his presence discoverable by the exercise of reasonable care, the car had been started to his injury while he was in the act of getting aboard with care for his own safety, a verdict for him under those conditions could stand. There is not only no proof to sustain any of those conditions, but the testimony of Fels and his two witnesses establishes the contrary. He was behind the car running after it. The conductor did not see him, nor was he required to know or suspect that he was there. He was not then in the usual place of those whose purpose it is to take passage. He

came on rapidly and seized the handle bar just as the car was starting and was instantly thrown down before he could place his foot on the step. We are of opinion that there was no proof to sustain a finding of the relation of carrier and passenger, and inasmuch as the verdict was for defendant the objections to the instructions present a moot controversy. Robinson v. Tramway Co., 164 Fed. 174, 90 C. C. A. 160. Nevertheless, those objections have been considered, and on the assumption that there was an issue of fact as to whether the relation of carrier and passenger existed we are not prepared to say that the court erred in the respects claimed. The situation was treated in two aspects, the duty of the carrier to those in the street, prior to the inception of the relation of carrier and passenger, and then its duty after that relation arose. As to the first, it was stated that defendant's measure of duty was ordinary care. Lamline v. Houston Ry. Co., 14 Daly (N. Y.) 144; Foster v. Electric Co., 35 Wash. 177, 76 Pac. 995; Welsh v. Concord Street Ry., 223 Mass. 184, 111 N. E. 695; Donovan v. Hartford Street Ry. Co., 65 Conn. 201, 32 Atl. 350, 29 L. R. A. 297; Duchemin v. Boston Elevated Ry., 186 Mass. 353, 71 N. E. 780, 66 L. R. A. 980, 104 Am. St. Rep. 580, 1 Ann. Cas. 603. And as to the second, it was said that after one became a passenger the highest degree of care which a very careful and prudent person would have exercised under the same or similar circumstances was exacted of the carrier; and the substance of the conditions and requirements set out above to make one a passenger was also stated. Bearing in mind the facts which the jury was called upon to consider, we think there is no room for the claim that it might have been misled to apply one measure instead of the other. There is some color to the criticism, but the principles were stated more than once, and with sufficient clearness and separateness to avoid any confusion in their application; and after the summing up of the case by the court there was no chance left for a misconception of either principle. Taking the case on the basis dealt with by the trial court we are not persuaded that there was prejudical error.

Affirmed.

COTTERAL, District Judge (dissenting). My dissent is necessary, as I think there was error in giving and refusing instructions to the jury. Concededly, the plaintiff was injured at a street crossing where this car and cars usually stopped for passengers to get on and off. There was the implied invitation to passengers subject to their acceptance. The conductor had the duty, before giving the signal to start, to look and see whether passengers were safely on board. Where an invitation is given for the purpose and one attempts to go upon the steps to take passage, the relation of passenger and carrier is made out. 3 Thompson, Neg. § 3514; Cohen v. West Chic. St. Ry. Co., 60 Fed. 698, 9 C. C. A. 223; Dudley v. Front St. C. R. Co. (C. C.) 73 Fed. 128; St. Louis S. W. Ry. Co. v. Wainwright, 152 Fed. 624, 82 C. C. A. 16; Memphis St. Ry. Co. v. Huggins, 215 Fed. 37, 131 C. C. A. 345; Devoy v. Transit Co., 192 Mo. 197, 91 S. W. 140.

It is true the evidence tends to show that the plaintiff attempted to board the car at the time it was starting. No complaint is made of the

charge on that theory. But there was sufficent evidence to uphold a finding that while the car was stationary, the plaintiff seized the hand rail in order to board the car. This was recognized by the trial judge. A charge was asked for plaintiff, that if in such state of facts the car was suddenly and violently started, and thereby he was injured, and such conduct was not in the use of the highest degree of care exercised by prudent persons in like circumstances, and he was ordinarily careful for his safety, he was entitled to recover; also, that it was the duty of the motorman and conductor to see before starting the car, in so far as practicable, that there was no passenger in the act of boarding, and "that all passengers attempting to get on had done so safely, even tho the car had stopped for a reasonable length of time." In my judgment, these requests should have been given.

But the trial court gave the jury this rule:

"If plaintiff did get hold of the car before it started, but the persons in charge thereof did not know of the fact, and could not have known of it by the exercise of ordinary care, and he gave no notice of his intention to become a passenger, and had not timely presented himself, then he cannot recover."

And again:

"If you shall find * * * that plaintiff ran and placed his hand on the handle of the car before it started, and that thereafter, or thereupon, the car started and caused plaintiff to fall, and in this connection, if you shall further find * * * that neither the motorman nor the conductor saw plaintiff when he got hold of the handle of the car, and that they did not know, and by the exercise of ordinary care could not have known or observed, that plaintiff was about to board the car, then you ought to find for defendant."

These instructions are deemed to be erroneous, for the plaintiff might have become in fact a passenger before the car was started, as the evidence substantially tends to show, and, if so, then it would not be questioned that by uniform authority he was entitled to the highest practicable degree of care for his safety, and not merely ordinary care.

Clearly, it seems to me, the plaintiff should be awarded a new trial.