## ROBINSON et al. v. DENVER CITY TRAMWAY CO.

(Circuit Court of Appeals, Eighth Circuit. September 5, 1908.)

No. 2,601.

1. MASTER AND SERVANT—EVIDENCE—ACTION FOR NEGLIGENCE OF SERVANT—PRIOR CONDUCT.

In an action against an employer, where the sole charge is that an employé was negligent on a particular occasion, it is irrelevant to prove that he, or some other employé, had been negligent on other occasions.

2. SAME—MUNICIPAL ORDINANCE NOT AVAILABLE UNLESS PLEADED.

A municipal ordinance is not a public statute, but a mere municipal regulation, and to make it available in establishing a charge of negligence it must be pleaded, like any other fact of which judicial notice will not be taken.

3. APPEAL AND ERROR — ERRONEOUS CHARGE NO GROUND FOR REVERSAL, IF WITHOUT PREJUDICE.

Whilst questions of fact may not be retried on a writ of error, errors in the charge to the jury may be disregarded, if, upon all the evidence properly admitted, a verdict in favor of the unsuccessful party could not lawfully be sustained, and there be no erroneous exclusion of evidence offered by him.

4. TRIAL—QUESTION FOR COURT OR JURY—DIRECTION OF VERDICT.

When the evidence is undisputed, or is so clearly preponderant that the court, in the exercise of a sound judicial discretion, could give effect to but one verdict, the case may, and should, be withdrawn from the jury, and their verdict directed.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

Sterling B. Toney (Henry V. Johnson and R. Burge Toney, on the brief), for plaintiffs in error.

Howard S. Robertson (Charles J. Hughes, Jr., and Gerald Hughes, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. Mary A. Robinson, a passenger upon a street car, sustained fatal injuries when alighting or

preparing to alight therefrom while it was in motion, and her heirs brought an action against the street car company to recover for her death, alleging that it was caused by the negligence of the company's servants. The injuries were sustained in the city of Denver, at the intersection of Twelfth avenue and Steele streets, where the company maintains a Y upon which to turn its cars; that being the end of one of its lines of railway. The main track is in Twelfth avenue, and the Y is in Steele street. Outbound cars, on reaching the Y, pass around its first arm to a stopping place on its stem, and then move backward around the second arm to another stopping place on the main track. In that way they are completely turned preparatory to making the return trip across Steele street and along Twelfth avenue. The two stopping places are a little more than 100 feet apart, and passengers are permitted to leave and enter at both. The cars have an inclosed section and an open one; the former being in front. At the side of the open section, near the middle of the car, is an open doorway, with a step or footboard below it, and in the center of the doorway is an upright post or bar, which passengers can grasp to assist themselves in entering and leaving. Mrs. Robinson was in the inclosed section of an outbound car which reached Steele street in the evening shortly after it became dark. The car passed around the first arm of the Y and stopped on the stem for a brief interval, as it had to do, so that the switch might be thrown and the movement of the car reversed. It then moved backward around the second arm of the Y, and as it passed the middle of the curve Mrs. Robinson fell to the ground in front of the doorway in the side of the open section. One of her legs passed under the car and was crushed by the wheels; death resulting therefrom in a few days. Before the stop on the stem of the Y she gave no signal and made no request indicative of a purpose to leave the car at that place. She had used that car line many times before, had entered and left the cars at both stopping places, was familiar with the surroundings, was of mature years and in full possession of her faculties, and was carrying nothing more cumbersome than a small hand bag.

Thus far the facts were conceded, and so the controlling question was: How did she come to fall at the side of the moving car as it passed around the curve in the second arm of the Y? The complaint charged that when the car stopped on the stem of the Y she arose from her seat in the inclosed section and advanced to the open section, intending to alight therefrom; that as she stepped into the open section the car suddenly moved backward toward the other end of the second arm; that she took hold of the upright post or bar at the doorway in the side of the car; and that, while she was holding to this post or bar and "waiting for the car to stop" at the other stopping place, which "was but a few yards" away, the motorman or conductor "carelessly, recklessly, and negligently backed" the car around the curve "at such a reckless, violent, and rapid rate" as to break her hold on the upright post or bar, "and threw her" through the open doorway "with great violence." The answer denied what was so charged, and alleged that her injuries were due to contributory negligence on

her part, without which they would not have been sustained. The issues so presented, with such evidence as was admitted in that connection, were submitted to the jury, and they returned a verdict for the defendant, which the court declined to disturb on a motion for a new trial.

A reversal of the judgment is now sought because of rulings whereby evidence was excluded, and because of alleged errors in the charge to the jury. As some of the former were not excepted to, they must be held to have been acquiesced in. Newport News, etc., Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743, 39 L. Ed. 887; Stewart v. Wyoming Ranch Co., 128 U. S. 383, 390, 9 Sup. Ct. 101, 32 L. Ed. 439; Rodriguez v. United States, 198 U. S. 156, 165, 25 Sup. Ct. 617, 49 L. Ed. 994.

One ruling to which an exception was reserved was the rejection of an offer to prove by a woman living in that locality that on other occasions she had seen cars move around the same curve "at a very rapid rate." The ruling was right. The offer fell within the rule that in an action against an employer, where the sole charge is that an employé was negligent on a particular occasion, it is irrelevant to prove that he, or some other employé, had been negligent on other occasions. 1 Wharton Ev. (3d Ed.) § 40; Maguire v. Middlesex R. Co., 115 Mass. 239; Harriman v. Pullman Palace Car Co., 29 C. C. A. 194, 85 Fed. 353; Delaware, etc., Co. v. Converse, 139 U. S. 469, 476, 11 Sup. Ct. 569, 35 L. Ed. 213; Louisville, etc., Co. v. McClish, 53 C. C. A. 60, 68, 115 Fed. 268, 276; Pueblo Building Co. v. Klein, 5 Colo. App. 348, 38 Pac. 608.

Another ruling to which an exception was taken was the exclusion of a purported ordinance of the city laying certain duties upon the defendant which it was said were violated on this occasion. This ruling was also right. An ordinance is not a public statute, but a mere municipal regulation; and, to make it available in establishing a charge of negligence, it must be pleaded, like any other fact of which judicial notice will not be taken. Here it was not pleaded, and so could not be proven. City of Greeley v. Hamman, 12 Colo. 94, 96, 20 Pac. 1; Weiss-Chapman Drug Co. v. People, 39 Colo. 374, 378, 89 Pac. 778; Fay v. City of Ft. Collins, 40 Colo. 262, 90 Pac. 512; Garlich v. Northern Pac. Ry. Co., 67 C. C. A. 237, 131 Fed. 837; Horn v. Chicago, etc., Co., 38 Wis. 463; Watt v. Jones, 60 Kan. 201, 56 Pac. 16; Austin v. Walton, 68 Tex. 507, 5 S. W. 70; Illinois Cent. R. Co. v. Ashline, 171 Ill. 313, 49 N. E. 521; Gardner v. Detroit St. Ry. Co., 99 Mich.. 182, 58 N. W. 49; 4 Elliott on Railroads (2d Ed.) § 1698; 6 Thompson on Negligence (2d Ed.) § 7470; 28 Cyc. 393. And it may be observed in passing that the terms of the ordinance were such that its application to the case was at least very questionable.

The objections to portions of the charge to the jury are earnestly and forcefully pressed upon us, but it will not be necessary to consider them, if, as is contended by the defendant, the verdict was right as matter of law; for, whilst we may not retry the questions of fact, we may disregard any errors in the charge, there being no erroneous exclusion of evidence offered by the plaintiffs, if, upon all the evidence properly admitted, a verdict in their favor could not lawfully

have been sustained. In such cases we but apply the familiar rule that errors which could not have prejudiced the unsuccessful party give no right to a reversal. Cook v. Foley, 81 C. C. A. 237, 152 Fed. 41; Ætna Indemnity Co. v. Coal Co., 83 C. C. A. 431, 154 Fed. 545; Brobst v. Brock, 10 Wall. 519, 18 L. Ed. 387; McLemore v. Louisiana State Bank, 91 U. S. 27, 23 L. Ed. 196; West v. Cambden, 135 U. S. 507, 10 Sup. Ct. 838, 34 L. Ed. 254.

We turn, then, to the evidence to ascertain whether that bearing on the issues of fact before stated, particularly the alleged actionable negligence of the defendant, was such that a verdict for the plaintiffs could not lawfully have been sustained; or, putting it in another way, whether the evidence which made against the plaintiffs was undisputed, or so clearly preponderant that the Circuit Court, in the exercise of a sound judicial discretion, should have withdrawn the case from the jury and directed a verdict for the defendant. If so, that court rightly declined to disturb the verdict on the motion for a new trial, and we should decline to disturb it now. Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Commissioners v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59; Southern Pacific Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338, 40 L. Ed. 485; Patillo v. Allen-West Co., 65 C. C. A. 508, 131 Fed. 680; Swift & Co. v. Johnson, 71 C. C. A. 619, 626, 138 Fed. 867, 874, 1 L. R. A. (N. S.) 1161.

In addition to the conceded facts before stated, there was this evidence: Euphemia I. Haskill, a married daughter of Mrs. Robinson, was the only one of plaintiffs' witnesses having any personal knowledge of the accident. She had gone to the car line to meet her mother, and was in Steele street near the front end of the car when it stopped on the stem of the Y. She testified that "just as the car was making its stop" her mother rose from a seat in the inclosed section and walked to the open section, "but before she got to" the side doorway the car began its backward movement; that she then took hold of the upright bar with her left hand, having her hand bag in the other; that she was still in that position when the doorway, which was on the same side of the car as the witness, passed out of sight around the curve; that the witness was near enough to have spoken to her mother when the latter was at the doorway, but she did not do so, and she thinks her mother did not see her; that "the car backed very swiftly" and "was going very rapidly"; that as the car moved backward the conductor was at the rear end of it, facing in the direction it was moving; that the witness followed the car, and when she found her mother at the side of the track in an injured condition the latter said, "Oh! why did they not stop that car, and why did they go around there so fast?" Two of her answers given on cross-examination were somewhat confusing in the light of her other testimony. They were:

"Q. Had your mother started to arise before the car started back? A. No."

And also:

"Q. Where was the car when you saw your mother step out from the inclosed car into the open portion? A. It was where it should stop, had it stopped on Steele street."

164 F.—12

She did not know, and therefore did not say, how her mother came to fall; nor did she describe her mother's attitude in holding to the upright bar as that of one who was having some difficulty in maintaining her hold. And it is of some significance in that connection that there was a seat immediately at the mother's right which she could have taken, if there was occasion to do so.

Upon the part of the defendant there were three witnesses having some personal knowledge of the accident. One, the motorman, could not see what took place in the car, because of the curtains at the front end of the inclosed section; but he testified that the stop on the stem of the Y was of short duration, about 10 or 15 seconds, that he then received a bell signal to back the car, and that he gave it "just one point," which he explained in this way:

"One point is the first point to start her; that is, you get half the current with all the resistance in the car, and she starts very slow on one point. There are nine points altogether on the switch. The first point starts very easy, the second point gives a little more, and so on up to nine, until you get full speed."

He further said that the maximum speed attained in rounding the curve could not have been more than three or four miles an hour, and that he stopped the car promptly and readily when he realized that an accident had occurred. Another witness, the conductor, testified that the car came to a full stop on the stem of the Y; that there were then three passengers on the car, all being in the inclosed section; that he looked into that section, and none of them gave any indication of a purpose to leave the car there, all remaining in their seats; that he then signaled to the motorman to back the car, and himself took a position at the rear end of it, facing in the direction of its movement, as it was his duty to do; that the car moved "about as fast as a man or a horse would walk," or about three or four miles an hour; and that about half way around the curve he heard a scream, and, on running to the doorway and alighting, he found Mrs. Robinson lying at the side of the track near the front end of the car. The third witness, Miss Baumgartner, was a passenger, and had the best opportunity of knowing what actually occurred, because she was sitting in the inclosed section, near the door leading to the open section and on the opposite side of the car from the side doorway. She testified that the car stopped on the stem of the Y for a short time, she did not "know how long, just for a second or so"; that no one arose or gave any signal then; and that after the car began moving backward Mrs. Robinson arose, walked to the side doorway, and "stepped off" the car, it being then about half way around the curve. We quote the following from her cross-examination:

"Q. You don't know whether she stepped off the car, or whether she fell off, or was thrown off? A. She stepped off. Q. How do you know that? A. Because I was watching her. Q. Why were you watching her? A. Because I wondered if she was going to get off. I thought she was going to stop at the door until the car got around, and instead she walked right off. Q. You were sitting in the front, closed car? A. I was not sitting in front. I was sitting by the door [meaning the door between the two sections]. Q. And had been sitting by her coming up? A. Yes."

It should be said of this witness that she appears to have been entirely disinterested and without any acquaintance with Mrs. Robinson, the motorman, or the conductor. The third passenger was also a woman, and was not called as a witness; her identity being undiscovered. The evidence included several photographs, admitted to be correct, illustrating the various positions of the car, its division into sections, and some other matters bearing upon the inquiry. In so far as effect has not already been given to them, they tended to show that one in Mrs. Haskill's position could not have had as full or as continuous a view of her mother's movements and position as is indicated in her testimony; that one in Miss Baumgartner's position could have seen all she claims to have seen, if it actually occurred; and that at the place where Mrs. Robinson fell, which was on the convex side of the curve, the side line of the car midway between its ends is nearly above the rail, so that one falling directly to the ground at that place would be in closer proximity to the rail than if the track were straight.

It is apparent that the only evidence having any tendency to sustain the negligence charged as the cause of the accident—that is, that the car was negligently backed around the curve at a recklessly rapid rate, thereby breaking Mrs. Robinson's hold of the upright bar and throwing her through the open doorway—was the testimony of Mrs. Haskill that her mother was standing at the doorway holding to the bar with her left hand, that the car was backing "very swiftly," or "very rapidly," and that her mother said, after the accident, "Oh! why did they not stop that car, and why did they go around there so fast?" and also the conceded fact that the mother fell to the ground in front of the doorway about midway of the curve, which was about 50 feet from where Mrs. Haskill stood and about 25 feet from where the doorway passed out of her sight. Without now considering whether, if there were no other testimony, this would have justified a jury in finding that the car was backed at a negligently excessive speed, considering the place, thereby breaking Mrs. Robinson's hold on the bar and throwing her through the doorway, we are of opinion that, in the presence of the other evidence, such a finding would have been without any reasonable justification. The statements of Mrs. Haskill respecting the speed, as also the one attributed to her mother, were quite indefinite, gave but little idea of the rate referred to, and related to a subject upon which their opinions were of little value. Besides, the statement attributed to the mother indicated that she thought the car had not stopped, when all agree that it had.

Opposed to that testimony were the definite statements of the motorman and conductor, whose experience and closer observation enabled them to speak with precision and made their opinions of real value. In addition, their testimony was strongly sustained in different ways. Mrs. Robinson fell immediately at the side of the car, as would likely have been the case if she incautiously stepped from it when it was moving moderately, and not away from it, as would likely have been the case if her hold had been broken and she had been thrown through the doorway by any excessive speed. Again, the distance from one stopping place to the other was only a little over 100 feet, or about

three car lengths, and it is more than improbable that the car would have been moved at an immoderate rate in going so short a distance. Lastly, Mrs. Robinson's fall is accounted for, consistently with the moderate movement of the car, by Miss Baumgartner, whose testimony was positive and contained nothing to suggest that it was not disinterested and credible. These considerations make it plain, as we think, that the evidence upon the question of the defendant's negligence, which was charged as the cause of the accident, preponderated so clearly against the plaintiffs as to have entitled the defendant to a directed verdict.

The judgment is accordingly affirmed.