CHOCTAW, O. & G. R. CO. et al. v. HAMILTON.

(Circuit Court, E. D. Oklahoma. October 3, 1910.)

No. 616.

1. EVIDENCE (§ 32*)—PLEADING (§ 6*)—MUNICIPAL CORPORATIONS (§ 122*)—MUNICIPAL ORDINANCE—NECESSITY OF PLEADING.

A municipal ordinance is not a law of which a court will take judicial notice; but it must be both pleaded and proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 42; Dec. Dig. § 32;* Appeal and Error, Cent. Dig. § 2959; Pleading, Cent. Dig. §§ 8, 9; Dec. Dig. § 6*; Municipal Corporations, Cent. Dig. §§ 281–283; Dec. Dig. .122.*]

2. MUNICIPAL CORPORATIONS (§ 671*)—STREETS—ABUTTING OWNERS—RIGHT OF ACTION FOR OBSTRUCTING.

Under the established law of Oklahoma, as well as by the great weight of authority generally, the owner of property abutting on a street cannot recover damages for the obstruction of such street at a distance from his property, where it does not deprive him of access to it through other streets; his injury in such case being no different in kind from that suffered by the public in general, and not one for which he can maintain an action as a private individual.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1447–1450; Dec. Dig. § 671.*]

Appeal from the United States Court for the Southern District of the Indian Territory.

Action by J. E. Hamilton against the Choctaw, Oklahoma & Gulf Railroad Company, the Western Oklahoma & Gulf Railway Company, and the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendants appeal. Reversed.

Thomas R. Beman, for appellants.
Potterf & Walker, for appellee.

CAMPBELL, District Judge. This case was tried, in the United States Court for the Southern District of the Indian Territory, at Ard-

more, in January, 1906, resulting in a verdict and judgment for plaintiff against the three defendants in specific amounts as to each, as set forth in the verdict. In due course the case was appealed by the defendants to the Court of Appeals for the Indian Territory, and before decision by that court statehood intervened, and the appeal is now here by operation of law for determination by this court.

From the complaint filed in the trial court, it appears that plaintiff was the owner of a certain lot in the town of Ardmore, upon which he resided, having thereon, as he alleges, improvements costing some $1,-500, which lot, as so improved, was, at the time of the building of the defendant's railroad through Ardmore, worth the sum of $3,000. He alleges that the defendants Western Oklahoma & Gulf Railway Company and the Choctaw, Oklahoma & Gulf Railroad Company constructed and owned the line of railway through Ardmore on and about which the things he complains of exist; that the defendant, Choctaw, Oklahoma & Gulf Railroad Company placed thereon locomotives, engines, cars, and all other necessary appliances, and continued to operate the same since the completion of the road until about the ———— day of ————, 1904, when the defendant Chicago, Rock Island & Pacific Railway Company leased the railroad, with its right of way, tracks, switches, depots, machine shops, engines, cars, and other appliances, and has ever since, and was at the time of filing of the complaint, using, operating, and controlling the same. He further states that the defendants the Western Oklahoma & Gulf Railway Company and the Choctaw, Oklahoma & Gulf Railroad Company, in the construction of the said railroad, built the same within about 35 feet of his property, and has established west of and near the plaintiff's property a roundhouse, machine shops, a large water tank and coal bins, and in the operation of said railroad and switches the defendants have continually maintained, and the defendant Chicago, Rock Island & Pacific Railway Company is now maintaining, thereon engines and cars. He then charges that the defendants have negligently constructed and maintained a dangerous crossing on B street, a short distance north of his premises; but the court excluded all testimony as to this crossing.

He further charges that the defendants, disregarding plaintiff's rights in the premises, have built and constructed, and are now maintaining, said water tank and coal bins so as to obstruct completely and entirely Fifth avenue, a street running east and west along the south line of his property, which obstruction is at a point west of and near plaintiff's premises, and have ever since the same was built, and are now, preventing plaintiff from using said street or avenue to the west of his said premises; that there is no other street running east and west to the south of plaintiff's property, and no other street, except B street, above mentioned, that he can use going north, without great inconvenience and loss of time. He then charges that said coal bins have no top, the sides being only about two feet high, so that, when coal is deposited or unloaded into them, the coal dust blows in great quantities upon the plaintiff's premises, settling thereon, to the great discomfort of himself and family and damage to his property. He states that his residence fronts said tracks, water tank, coal bins, and roundhouse, and that said structures, and the smoke and dust and

noise coming therefrom and from the engines kept there, are particularly and especially objectionable to plaintiff, and injurious to him and his family and his property. He further complains that, in the operation of said railroad and switches, the defendants have continually maintained, and the last-named defendant is now maintaining, in and about said roundhouse, near said water tank and coal bins, and in front of and within a few feet of plaintiff's premises, engines which are continually emitting large volumes of smoke, dust, and cinders, which come over and settle down upon his premises, blowing into the house, and upon the clothing, etc., rendering the condition of himself and family uncomfortable, and at times intolerable; that said engines are negligently and carelessly permitted to stand for hours at a time very near the plaintiff's premises, blowing off steam, etc., making loud and disagreeable noises, particularly at night, to the great disturbance of the rest of plaintiff and his family; that said engines and cars obstruct the street crossing and render the street dangerous to travel; and that defendants have abundant trackage, not otherwise in use, farther west and away from plaintiff's premises, where the same would not annoy, disturb, or injure plaintiff or any one else. For all of which he prays damages in the sum of $2,000.

The defendants filed answer specifically denying the allegations of the plaintiff's complaint, and setting up certain affirmative defenses not necessary now to be noticed.

At the trial, the plaintiff offered testimony tending to show that the value of his premises immediately before the building of the railroad was $3,000, and immediately thereafter it was from $1,500 to $2,000. He also offered testimony tending to show that, at several times since the building of the road, the smoke and cinders from the engines standing at or near the coal bins, drifted over his premises and settled thereon, causing him and his family inconvenience and discomfort. He also offered testimony tending to show that, at the point where said railroad crosses Fifth avenue, the street was entirely obstructed by the coal bin and other railroad structures. From the uncontradicted testimony offered at the trial, it appears that plaintiff's property is not touched at any point by the railroad or its right of way; it being some 35 feet from the right of way to plaintiff's property at the nearest point. Plaintiff's lot is at the southwest corner of block 447, fronting to the west on B street, and to the south on Fifth avenue. Fifth avenue runs east and west, along the south side of this lot and block. B street runs north and south, along the west side of this lot and block. Block 448 is immediately across B street, to the west of plaintiff's property. The railroad, coming from the northeast, crosses the northwest corner of block 447, then crosses B street at a point north of plaintiff's lot, thence, continuing southwesterly, crosses block 448, and thence crosses Fifth avenue, which also runs along the south side of block 448. It appears from the evidence that this crossing on Fifth avenue is completely blocked by the coal bins, water tank, and other structures built and maintained by the defendants, and this obstruction is one of the things complained of by plaintiff. It appears from the testimony that this obstruction is something over 300 feet from plaintiff's premises at the nearest point, and, as stated before, no portion of plaintiff's

property is taken by the railroad, nor does it abut upon the right of way at any point, nor are any of the crossings complained of by plaintiff upon that portion of either B street or Fifth avenue immediately in front of plaintiff's property. It also appears from the evidence that, while plaintiff's access to certain other portions of the town of Ardmore is cut off, so far as Fifth avenue is concerned, they may be reached by the use of other streets, although, in some instances, it may be a more circuitous route.

At the trial the defendant objected to the introduction of testimony relative to the obstruction upon Fifth avenue, for the reason that whatever injury or damage, if any, plaintiff suffered by reason thereof, was common to the public and in no sense peculiar to himself. This objection the court overruled, to which defendants excepted. The plaintiff was permitted by the court to show the character of the obstruction placed in said Fifth avenue, and the fact that it completely obstructed the street. At the conclusion of the evidence, the defendants requested the court to charge the jury as follows:

"You are further instructed that, unless plaintiff's property is adjacent to and abuts on said right of way of said railway, he is not entitled to recover for any obstructions to the public highway not abutting and adjacent to his property, even though access to other portions of the town are thereby made inconvenient, by reason of any improper construction to said crossing upon said highway, and that said damages, if any, are common to the public at large, and not to the individual not adjacent to or abutting upon said railway."

This request the court refused, to which the defendants excepted. The ruling of the court, in permitting plaintiff to offer evidence regarding the obstruction of Fifth avenue, and its refusal to give the charge requested, are assigned as error by the defendants. The case was tried upon the theory that the plaintiff could recover both for the inconvenience suffered by him and injury to his property by the obstruction of Fifth avenue, and the damage occasioned by the noise from the engines standing in front of or near his premises, and the cinders, smoke, and dust arising from the operation of the road. The only testimony as to the specific amount of damage suffered by him was that tending to show that immediately before the railroad was built his property was worth $3,000, and that immediately thereafter it was worth only from $1,500 to $2,000, which estimates were based, as the evidence shows, in a large measure upon the fact that the streets were obstructed and the property depreciated by reason of the location of the railroad.

In view of the refusal of the court to exclude this testimony regarding the obstruction of the street, and to withdraw it from the consideration of the jury by the instructions requested, it was presumably considered by the jury in arriving at the damages awarded. Particularly does this appear when it is considered that the complaint alleges and the evidence clearly indicates that the road, while constructed by the Western Oklahoma & Gulf Railway Company, was never operated by that company, but was immediately turned over to the Choctaw, Oklahoma & Gulf Railroad Company, which operated it until the lease to the Chicago, Rock Island & Pacific Railway Company; so that the noise and coal dust and smoke and cinders, of which plaintiff com-

plains in the operation of the railroad, could in no event have been caused by the first-named company, and yet the jury rendered a verdict against that company for $200. If, then, the court was in error in permitting this testimony over the objection of the defendants, and was also in error in refusing to instruct the jury, as requested, so as to exclude this element of damage from their consideration, then such error was fatal, and the judgment must be reversed, for it cannot be determined what portion of the recovery is based upon such testimony.

At the trial the plaintiff introduced in evidence the ordinance of the city of Ardmore granting permission to the defendants to build into the city of Ardmore, which permission, the ordinance recites, is granted—

"upon the Western Oklahoma Railway Company making compensation to all individuals whose property is taken in whole or in part, or, not being taken in whole or in part, is injuriously affected by the construction, maintenance, and operation of its railroad, etc., * * * and upon the construction and maintenance of suitable and safe crossings upon its railway and switches at all intersections of streets, avenues, and alleys, and erecting such crossings as may be designated by resolution of the city council."

It does not clearly appear for what purpose this ordinance was introduced; but it clearly cannot be relied upon by the plaintiff as giving him any rights, on account of the obstructions complained of, which would not otherwise accrue to him, for the reason that the provisions of the ordinance are not relied upon or pleaded in his complaint.

"The general rule is well established that municipal ordinances and by-laws are not laws of which judicial notice will be taken, but facts to be pleaded and proven. If not duly pleaded, they cannot be proven. And if duly pleaded, and not proven in legal method, the action must fail, no matter how notorious the ordinance may have been." 28 Cyc. 393; Garlich v. Northern Pac. R. R. Co. (C. C. A., 8th Cir.) 131 Fed. 837, 67 C. C. A. 237.

Nor is it clear that, if it had been properly pleaded and proven, it would give plaintiff any private right of action for his alleged damages by reason of the obstruction of the street. There are two conditions provided in the ordinance: First, that compensation shall be made to all individuals whose property is taken, in whole or in part, or, not being taken in whole or in part, is injuriously affected, by the construction, maintenance, and operation of the railroad, etc. And then follows another condition: That safe crossings shall be constructed at all intersections of streets, avenues, and alleys. The first provides for compensation to individuals for injuries peculiar to them, not suffered by the public in general. The second looks to the convenience and safety of the public by providing that the streets shall be left open for public travel and provided with safe crossings. It is the second condition that is broken if the charge as to the obstruction of the street be true. Such obstruction is clearly a matter of public concern, and affects the entire traveling public; but for such injury the plaintiff, as one of the traveling public, has no private right of action. Therefore, unless, under the law and the facts in this case, it can be said that the plaintiff is injuriously affected by the obstruction of Fifth avenue, in some way peculiar to himself, aside from the in-

jury he might suffer as one of the general public, the ordinance gives him no rights he would not otherwise have.

In the case of Wylie v. Elwood, 134 Ill. 281, 25 N. E. 570, 9 L. R. A. 726, 23 Am. St. Rep. 673, cited by defendant in error, the court says:

"The doctrine that special damage must be shown in order to justify a private right of action for injury growing out of a public nuisance had its origin in the consideration of nuisances growing out of obstruction of highways or navigable streams. For instance, if a man dig a ditch across a highway, the traveler would have no action for the inconvenience which he suffered in common with the rest of the public; but, if his horse fell into the ditch and was killed, he would thereby suffer a special damage not common to the others."

In the case of Scrutchfield v. C., O. & W. R. R. Co., 18 Okl. 308, 88 Pac. 1048, 9 L. R. A. (N. S.) 496, the Supreme Court of Oklahoma Territory had occasion to pass upon a similar question. There the plaintiff was the owner and occupier of both residence and business lots at the time the railroad was constructed along Vine street, of Guthrie. Two of the lots were located at the corner of Springer avenue and Vine street. The railroad took the west half of Vine street and completely closed Springer avenue immediately to the west of the two lots. Two other lots of plaintiff were located on Vilas avenue, which ran east and west in front of the lots, across Vine street, at a point 75 feet west of the lots. By construction of the railway upon Vine street, Vilas avenue, 75 feet west of said lots, was completely obstructed. The petition filed in the territorial court set up the foregoing facts. A demurrer was sustained, which was charged as error. After reviewing the allegations of the petition, the court says:

"From this it will appear that no part of the plaintiff's property has been taken, and that the damage sought to be recovered is for a consequential injury which affects all persons in the vicinity alike, except possibly in the degree of injury believed to have been sustained because of the construction of a line of railroad along a public street of the city. Every person has the same interest and right in a public street or thoroughfare that any other person has, except that property owners have a special right of ingress and egress to their property from the street, which right may not be taken from them without just compensation, because this is an injury peculiar to the particular property owners so affected. It is not pretended in this case that ingress or egress to the property in question is affected by the construction of the line of railroad at the place where it was constructed, and it was not injured, therefore, in a manner different from what all the real property in that vicinity was injured. * * * The plaintiff, arguing his case from the basis of the statement above made, seems to take the position that the right of access to property is curtailed if there is an obstruction to a street upon which his property abuts, although at a point distant from the property. Such argument ignores the proposition that a right of recovery in an action of this kind must, if maintainable, be based upon an injury peculiar to the individual, as distinguished from the public generally. In this respect the plaintiff's position is clearly stated in the following additional quotation from his brief: 'The obstruction of the easement of access need not always be upon the immediate front of the lot, the owner of which is affected; but if the obstruction, though remote, renders access to such property more difficult, or impairs it in a substantial manner at a point where it abuts upon the street, the property rights of the owner are invaded, and he may recover'—citing in support of the proposition Dantzer v. Railroad Co., 141 Ind. 604 [39 N. E. 223, 50 Am. St. Rep. 343], reported in 34 L. R. A. 769. As the above is a clear statement of the only issue in this case, we have examined with care the authority cited

in support of it, and are constrained to say that we do not think this view and statement of the law is upheld by the decision cited, the syllabus of which is as follows: '(1) A constitutional right to a remedy for an injury to property does not include the right to recover for an injury not different in kind, but only in degree, from that suffered by the community in general from the vacation of a remote part of the street, though it causes depreciation in the value of property, but leaves ample means of access thereto. (2) Depreciation in the value of property by the added inconvenience of access thereto consequent on the vacation of a part of the street at a point some distance therefrom is an injury not different in kind, but only in degree, from that suffered by the community in general.' In the body of the opinion, that court defines what is meant by the term 'community in general': 'The community in general does not mean those who use the street and yet reside at such a distance from the railroad as to suffer none of the annoyances incident to its construction and operation, but it means those who reside in the immediate vicinity of the railroad, and are subject to the inconveniences incident to such a structure. The location and operation of a railroad upon a public highway may occasion incidental inconvenience to an abutting landowner, but until it cuts off or or materially interrupts his means of access to his property, or imposes some additional burden on his soil, his injury is the same in kind as the community in general.' Mr. Justice Howard, of that court, specially concurring in the opinion, says: 'There can be no doubt, however, that the overwhelming weight of authority, at least in this state, is in favor of confining the award for such damages to those who are deprived in whole or in part of access to that section of the highway immediately abutting upon or in front of their own real estate.' Applying the rule here laid down to the case at bar, it becomes manifest that the plaintiff's injury (if any) must inevitably be the same as that of other lot owners in that immediate vicinity, and under the authority of this case the plaintiff would not be entitled to recover."

### After reviewing other authorities, the court proceeds:

"Authorities might be multiplied, almost without limit, that where, as in this case, no part of the plaintiff's premises has been taken, the street upon which his property abuts is not interfered with, and his only grievance consists in not having free and unobstructed access to his premises on one particular street in one direction. All the other streets of the city being open and unobstructed, he suffers no other or different kind of grievance or damage than such as is common to the general public, and he cannot recover."

Since statehood, the Supreme Court of this state has had occasion to consider the same question in the case of Choctaw, Oklahoma & W. R. N. Co. v. Castanien, 23 Okl. 735, 102 Pac. 88. Here it was sought to recover as one element of damage the amount by which plaintiff's property had been depreciated by the obstruction of an alley, which ran behind the premises. The Supreme Court of this state cites briefly the Scrutchfield Case, supra, and, after reviewing the case, says:

"Following the holding of the court in that case, we are constrained to hold in this case that the injury was consequential, for which no recovery can be had."

### In conclusion, the court says:

"Paraphrasing a portion of the opinion in Scrutchfield v. Choctaw, etc., Ry. Co., supra, we concluded that authorities might be multiplied almost without limit that where, as in this case, no part of plaintiff's property has been taken, the alley upon which it abuts is not interfered with, and his only grievance consists in not having free and unobstructed access to said property in one direction, all other alleys of the city being open and unobstructed, he suffers no other or different kind of grievance or damage than such as is common to the general public, and he cannot recover."

In Elliott on Railroads and Streets, § 813, the author says:

"It seems clear to us that, upon principle, a landowner's easement of access must, as a general rule, include the right to have so much of the street kept open, at least, as will give him an outlet to some connecting street; and it follows, therefore, that where a railroad is built across the mouth of a cul-de-sac, so as to deprive him of his only means of access, he is entitled to damages, although his property does not abut upon that portion of the street where the railroad is constructed. It would seem, also, upon principle, that where the easement of access is seriously impaired, although not destroyed, and a material depreciation in value of the property is caused by the permanent obstruction of a street, the owner suffers a special injury, and is entitled to damages, even though his property does not abut directly upon that portion of the street. The great weight of authority, however, is to the effect that the owner of property abutting on the street at a distance from the point obstructed suffers no special or peculiar damage, and cannot recover for any depreciation in the value of his property caused thereby, even where the railroad company is required by law to compensate the owner for all property damaged."

Following the doctrine established in this state and by the great weight of authorities, it is clear that while, as a consequence of the obstruction of Fifth avenue, the defendant in error may have suffered in a greater degree than the public generally, especially that portion of the public at a remote distance from the obstruction, still his injury is not different in kind from that suffered by the public in general, and is not an injury for which, as a private individual, he can maintain an action against the plaintiffs in error. That the trial court committed error in permitting proof as to the obstruction to go to the jury, and in not withdrawing it from their consideration as requested by plaintiff in error, is clear. Presumably a part of the recovery allowed by the jury in their verdict was for this obstruction, which the court erroneously permitted them to consider as an element of damage. How much of the recovery is for this obstruction, and how much is for damage on account of annoyance of smoke and coal dust, the record does not disclose. For this error, therefore, the case must be reversed.

It is also urged by the plaintiffs in error that as to other elements of damage, such as the noise, smoke, and coal dust, complained of, the evidence was too vague and uncertain to warrant a jury in returning a verdict against any one of the defendants. Upon an examination of the testimony, it is difficult to conceive how the jury could have intelligently apportioned the damages as to this feature of the case. It is true the plaintiff, when recalled just before the close of the case, testifies that the annoyance from smoke, cinders, and soot has been going on ever since the construction of the road. While the testimony on this feature of the case is far from satisfactory, there is some testimony tending to sustain complainant's complaint on this ground.

The case is reversed, and ordered placed upon the trial docket for a new trial.