Kinkead, J.
This action was brought for personal injury alleged to have been caused by the negligence of defendant. Upon trial the jury returned a verdict in favor of defendant. It is now submitted upon motion for a new trial in which the usual grounds are set forth as well as some unusual complaints.
Complaint is made of alleged “irregularity of the court in the cross-examination by direct and leading questions of wit *546 nesses, adverse to the plaintiff’s evidence, causing the jury to give undue weight to the construction of the evidence during the trial as appears of record.” The record does not support such claims. The charge that the court caused its construction of the evidence to be given undue weight by the jury by questions propounded by it is without foundation and support.
The fact about the matter is that the examination by plaintiff was so unsatisfactory in respect of clearness and definiteness that it became necessary for the court to ask questions to clear up some matters in order to obtain an intelligent view to determine how to charge the jury; and in other instances the court came to the rescue of plaintiff when his counsel seemed unable to ask questions that would pass muster on objection, in order to get along.
The following quotation is pertinent to the complaint made by counsel:
‘‘The unthoughtful advocate resents intervention by the judge, and when truth developed through question .propounded by the court militates against one side adverse criticism follows. The desire to win may control a party and counsel in avoiding or omitting lines of inquiry which may tend to develop material matters. Until called upon to discharge the solemn and responsible functions of a judge, they can never appreciate the high sense of obligation under which they act. * * * Let it be remembered that counsel seek only for their client’s success, but the judge must watch that justice triumphs. A judge is not a mere moderator between contending parties; he is a sworn officer, charged with grave public duties. He is charged with the grave duty of maintaining the truth and preventing wrong. For the accomplishment of such purpose he has large discretion. * * * It is the well settled general doctrine by numerous adjudications * ” * that it is not only the right but the duty of the judge * * * to ask questions of witnesses whenever it is necessary to develop the full truth of the case. * * *
. ‘ ‘ It would indeed be .a reproach to our system if a judge were required to see the right thwarted, truth concealed and injustice done through failure to ask material questions. Decisions are numerous wherein it has been decided to be within the discretion of the presiding judge to question witnesses during trial, etc.
*547 “It is said there is no limit to the right which belongs to the court of interrogating witnesses, etc. Ohio Civil Trials, Section 567.”
The foregoing is the rule deduced from decisions but the writer of the volume cited adds the following:
“That is putting it too strongly. Good taste and proprieties suggest limitations, whieh make for the benefit of the judge .as well as of parties. Besides the authorities have very clearly outlined the occasions when a judge may ask questions, and have suggested the manner in which they should be put. * * * No objection may be made to leading questions by the court,’’ Ohio Civ. Tr., Section 568.
The court may ask leading questions where counsel can not do so.
“The examination by the court should never have the appearance * * * such as may be calculated to lead the jury to infer that the judge has decided conclusions in his own mind,” etc. Ohio Civ. Tr., 568.
"The judge should- scrupulously avoid all semblance of partiality. To do this it is not difficult to frame a question calling for some omitted matter -or to so frame questions as to disclose a purpose to ascertain the truth without appearance of opinion.” Ohio Civ. Tr., Section 568.
A desire to disclose that the writer has personally given much time and consideration to the right and duty of the court respecting the matter of examination of witnesses by the court may justify the foregoing citation. The endeavor has always been to call into judicial service the precepts of law and its ethical principles. And it is much more conductive to correct and just administration of justice for lawyers to do likewise. Professional and judicial ethics require sincere purpose on the part of both counsel and court. Much might be said concerning the vice and virtue of “leading questions.” It is fundamental that the court may within its discretion permit leading questions to be asked. Having such discretion of course it is to be presumed *548 that the court is exercising that discretion when it asks a leading question. One of the vices of . leading questions is when they are designedly framed to gain improper advantage, to distort the facts or to improperly adduce favorable facts only, when the same might not be otherwise developed.
“Leading questions may tend to deceive or mislead a witness by forming a belief in accordance with the suggestion of the question, his answer being rather an echo to the question than suggestion of memory. Moore on Facts, Section 814.
“It is a good point of cunning for a man to shape the answer he would have in his own words. * * * Witnesses whose memories are prodded by the eagerness of interested parties elicit testimony favorable to themselves are not usually to be depended upon for accurate information.- 156 Fed., 721. * ® * Testimony thus developed is apt to be of little value because the answer chiefly comes from the partisan examiner because the language is his rather than that of the witness. ” Ohio Civil Trials, Section 576; 156 Fed., 721; 73 Fed., 239.
The primary purpose being to ascertain and develop truth in particular circumstances, this may sometimes justify or demand leading questions. It may be difficult to distinguish between questions which are objectionable because leading, and those permissible because the circumstances warrant the exercise of discretion to permit the same to be asked.
Certainly a judge can hardly be charged with prodding a witness with the eagerness of an interested party so as to elicit testimony favorable to one party or the other. Nor can it be said that he is a partisan examiner. Not being' in such position the natural presumption is that the court acts with perfect impartiality, with a desire to ascertain a material fact, or to develop truth. Of course the court should avoid asking “A question in such leading form as to indicate to the jury the mind of the court on a controverted fact.” Ohio Civ. Tr., Section 568.
“No objection may be made to leading questions by the court.” Id., State v. Marshall, 105 Iowa, 38.
Since counsel has made objections to questions by the court, and that the same were leading, it was considered a fitting occa *549 sion to recall the well settled rules on the subject for any good that might result, as well as to throw light upon the objections made to questions by the court.
The case at bar was an exceptionally interesting one from certain standpoints. It was strongly contested on both sides. According to the contentions of defendant the insinuations were that plaintiff was an imposter, that he suffered no such injury as claimed by him.
On the side of plaintiff his ease rested entirely on his own testimony, corroborated by the statements of his wife that he came home about that time with some injury to his person,_ and that he had consulted a physician, Dr. Welsh, within a day or few days thereafter. Dr. Welsh, however, gave strong testimony tending to show that his injury did not come from the cause claimed by him.
The record discloses a very unusual condition which the jury solved in favor of defendant.
We have carefully gone over the record, and particularly the questions propounded by the court to discover whether the interpretation of the attitude of the court made by counsel is in any wise warranted. Our examination shows that we helped, rather than injured counsel for plaintiff in the matter of examination; that we cleared up matters left vague by him. It required careful close watching to discover the meaning and purpose of counsel for plaintiff, not alone to guard against incompetent matters but to understand the scope of the testimony. It might as well be frankly stated that his examination was not always such as to make matters perfectly plain and clear. Some inquiry by the court was therefore essential.
The rule is that a court may propound such questions as may throw light upon the statements of witnesses, “particularly so, if questions put by counsel are not well calculated to develop material facts.” Ohio Civ. Tr., Section 567; State v. Spiers, 103 Iowa, 711:
The court may within its discretion recall a witness and examine him (Ohio Civ. Tr., Section 569; State v. Lee, 80 N. C., *550 483). The court recalled Mr. Gilhooley to make clear what plaintiff’s claims were. There was confusion on account of the conflicting claims of the parties. It had not been made clear to the court by plaintiffs’ examination the kind of door that was closed; whether it closed straight, or whether it would go out beyond the line of the ear and thus be more likely to strike a person. In view of the apparent claim of defendant developed on cross-examination, and the want of clearness left.by plaintiff’s examination the court considered further light essential. It was difficult for the court to form a proper view concerning the law .to be charged.
Claims were made that it was the door and then there was the claim as to starting the car. It is to be noticed that counsel for plaintiff made both these claims, though not by his pleading.
The examination by the court discloses that the questions were not leading, and that they did not disclose any opinion of the court, or any prejudice against defendant’s witnesses.
No objection or exception was made to- any of the questions.
“An opinion has been expressed that the rule which requires a party to make objections and save his exceptions should not be applied when witnesses are -being' examined by the court. State v. Marshall, 105 Iowa, 38.
“In this we do not concur believing it to be the duty and right of counsel to courteously object and save his exceptions..”
“Outside of the exception examination of witnesses by the court is subject to all rules of delivery and competency of evidence, and the same legal objections may, and should be interpreted as when conducted by counsel.” (Ohio Civ. Tr., Section 567; State v. Marshall, 105 Iowa, 38; People v. Lacoste, 37 N. Y., 192.)
We think there was no error in the matter of questions and that they did not prejudice plaintiff; on the contrary, they benefited him more than harmed him.
The chief question before the court, however, which we desire to discuss is in'respect to the refusal to admit in evidence certain parts of a city ordinance which were not allowed in evidence because the same had not been pleaded in the petition, and be *551 cause they were not entirely consistent with the theory of plaintiff’s cause.
We do not wish to be guilty of insubordination. We recall the example of Joseph R. Swan in the famous slavery case when he followed the decision of the Supreme Court of the United States much against his will.
He remarked in that famous decision in substance: “Our Constitutions might as well be written in beds of sand if our, courts do not follow the decisions of our superior tribunals.”
We fully appreciate this duty and obligation; but we do not wish to be made a slave to judicial precedent according to the foot rule measure proposed by our good friend, the prolific counsel for Mr. Gilhooley. We want to be certain that all the squares ,and corners meet and dovetail with each other. We do not insist upon “blue bottle” ease, but we do have great respect for the “rule of reason.” Seriously, we are devoted in our ideals concerning “good old sound precedent.” We yield loyal support to rules of “soundness and reason,” which are as wholesome now as they were years ago. We heartily believe that if we would accurately and religously follow the landmarks of pleading and that if we would not be misled by pleas of partisan advocates, or if we would not ourselves fall into loose habits we would come nearer the goal of perfect administration of justice.
Bides were made to obey and, not to be disobeyed. Premium should be placed upon obedience rather than upon disobedience. Advoeacj'* of rules from mercenary or utility standpoint is not as commendable as that which is supported by right and reason — for the sake of the law.
Rules of pleading being founded upon sound reason and justice, were made to follow, not to break. When once courts began to encourage and overlook breach of rules, the whole system is placed in jeopardy; we are then on the downward path. “Bound to follow judicial decision,” counsel say! Yes! When it follows the rule and does not countenance breach thereof, we follow, not otherwise. If courts break fundamental rules or overlook breaches thereof this is not á mandate to continue their viola *552 tions. But no court has ever held it to be error to uphold .and enforce a long-time and unanimously supported rule of pleading.
For many years we have been an ardent supporter of the code system of pleading. It may be pardonable to state that twenty years of teaching would tend to place one in .a rut of obedience rather than of disobedience to rules of pleading. Therefore, when it comes to actual enforcement, the impulse to do it strictly and rigidly is irresistible, the inclination being to scorn disobedience. The fundamentals of the English common law system as merged in the code were calculated to divest the subject of a cause of technicalities and to present a logical process of procedure, the object of which is truth and justice. It should be the aim of every person having to do with the administration of justice to fit himself by education so that he will not misuse it. It is an instrument of truth and justice, and not of chicanery and fraud. The code system is an accumulated system of wisdom and of years of experience, the rules and formulae devised after long experience being the best adapted to the purpose of arriving at certain and definite issues and arriving at a speedy and just decision. The rules are designed to facilitate the process of investigation of truth.
The action taken by the court in respect to admitting the ordinances under the pleadings, so strongly complained of by counsel, was in accord with the rule unanimously adopted and followed for many years. The only cloud upon its history consists of the isolated cases of disobedience by some trial courts, which may have been overlooked by appellate courts. Attention has been called to one such case, viz., Columbus Railway & Light Company v. Schrock, where an ordinance was admitted without having' been pleaded. This case was reversed on the sole ground of error in the charge.
The overlooking of an established rule in such an instance can not be regarded as a precedent.
It has never been held in Ohio that it was prejudicial error to uphold and sustain a well settled rule that facts must be pleaded before they can be proved. Therefore, this court con *553 siders itself obedient to precedent, as well as to superior authority, since it has sustained the law by .assessing the penalty upon the party who fails to comply with settled rules.
The ease of McDermott v. Mulligan in the court of appeals in volved precisely the same elements as did Meek v. Penn Co. The ordinance was competent evidence touching the negligence or contributory negligence of the plaintiff, Mulligan. With reference to this Judge Allread states:
“In addition to the rule of the common law the plaintiff’s duty may be measured by the ordinance and he was authorized to rely thereon. It can not, therefore, be said that his failure to look in the direction from which the defendant approached was, as a matter of law, contributory to negligence.”
Just as in the Meek case, the ordinance was competent as reflecting on the conduct of plaintiff. In those cases plaintiff was not relying solely on the ordinance, as here, as the gist of his cause, to fix the liability of defendant. Being competent touching the duty of plaintiff, it became competent for all purposes.
Courts of a municipality are bound to take judicial notice, of the municipality’s ordinances without pleading them. Ex parte Davis, 115 Cal., 447; People v. Quiver, 172 Mich., 280; Steiner v. State, 78 Neb., 147; Gallen Hall Company v. Atlantic City, 76 N. J. L., 20; Sivelsky v. Atlantic City, 84 N. J. L., 198; Buffalo v. Stevenson, 145 App. Div., 117; 129 N. Y. S., 125; Stutsman v. Cheyenne, 18 Wyo., 499; Houren v. Chicago, etc., R. R., 236 Ill., 620; 127 Am. St., 309.
So it is also held in some jurisdictions that where a case is triable de novo on appeal from a municipal court decision, the appellate court will pursue the same practice and will follow the same rules of taking judicial notice of the ordinances. Note Ann. Cases, 1914, C. P. 1233; Steiner v. State, 78 Neb., 147; Gallen Hall Company v. Atlantic City, supra; Sidelsky v. Atlantic City, supra.
But' not all the courts adhere to this rule, some maintaining the general doctrine that ordinances even in appeal eases will *554 not be judicially noticed. (Chicago v. Miller, 146 Ill. App., 530; Karchner v. State, 61 Tex,, C. P., 221.) In criminal cases on error courts invariably notice the municipal ordinances when they are not embraced in the bill of exceptions.
This is a mere suggestion that decision in McDermott v. Mulligan might have been based upon either of the foregoing rules.
Because of the disposition not to give effect to a sound and long settled rule we have taken the pains to carefully examine all the authorities, and state the rules supported by them.
It is an immemorial and universally accepted rule that courts of general jurisdiction do not take judicial notice of municipal ordinances that where a plaintiff relies upon the existence of an ordinance and acts or conducts in breach thereof as the gist of his complaint or as constituting part of his cause of action, the same must be specially pleaded as one of the facts upon which he relies, and that thereupon the same will be proven like other facts. The cases in support of this are collected in a note in 1914C. Annotated Cases, page 1232.
We justify the space of reprinting this collection of eases supporting a well settled, sound rule of pleading, on the ground that that there have been frequent cases of violation of well settled rules. So the following:
United States — A municipal ordinance is not a public statute, but a mere municipal regulation, and to make it available in establishing a charge of negligence, it must be pleaded like any other fact of which judicial notice will not be taken. Here it was not pleaded and so could not be proven. Robinson v. Denver City Tr. Co., 164 Fed., 174; 90 C. C. A., 160; Choctow, etc., Company v. Hamilton, 182 Fed., 117; Garlich v. North P. Ry. Co., 131 Fed., 837; 67 C. C. A., 237.
Alabama—Courts of this state do not take judicial cognizance of municipal ordinances. Ex Steam Laundry v. Lomas, 166 Ala., 612; Railroad v. Calderwood, 89 Ala., 217; 18 Am. St., 105; Clayton v. Martin, 7 Ala. App., 190.
Arkansas — (Full recognition is given to the authority of those cases which hold that the courts do not take judicial notice of ordinances and that parol evidence is not admissible to prove an ordinance.) City v. Cooper, 108 Ark., 24 and 30.
*555 California — Judicial notice will not be taken of a municipal ordinance showing authority for execution of tax deed without proof of ordinance. It is a general rule,- supported by unbroken authority in this state, that courts of record do not take judicial notice of municipal ordinances. Ex parte Davis, 115 Cal., 447; City v. Hevren, 126 Cal., 229. (In this ease we have no allegation as to the title nor the day of passage of the ordinance. The ordinance is not set forth nor the substance of it given; and therefore it is not sufficiently pleaded.) Dillon on Mun. Cor., Section 346.
Colorado — A municipal ordinance is not judicially noticed but must be established by proof. Wolfe v. Abbott, 54 Colo. App., 530. The courts will not judicially notice the provisions of a municipal ordinance. Coors v. Brock, 22 Colo. App., 470.
District of Columbia — “Municipal ordinances are not laws of which judicial notice will be taken, but are facts, to be pleaded and proven. If not duly pleaded, they can not be proven. While some of the cases hold that ordinances must be set out in haeo verba, we think the general rule to be that it is sufficient to set forth their provisions in substance. They must be carefully identified, however, that they may be found without difficulty.” District of Columbia v. Petty, 37 App., 156, citing 28 Cyc. Law and Pro., page 393.
Georgia—Judicial cognizance does not extend to contents of municipal ordinance. Dorsey v. State, 7 Ga. App., 366; McAllister v. State, 7 Ga. All., 541. (Both criminal cases.)
Illinois—On relying upon municipal ordinances in mandamus must allege and prove same .as a fact, as courts do not take judicial notice of them. People v. Busse, 248 Ill., 11. Judicial notice not taken of offices established by ordinance. Condon v. City, 249 Ill., 596 (personal injury case); Heidelberg Garden Co. v. People, 124 Ill., 331, 337, holding it elementary that an ordinance must be pleaded before court can take judicial notice, and before it can be put in evidence. Ill. Cen. Ry. v. Ashline, 171 Ill., 315. An ordinance neither pleaded nor proved will not be considered. Caradatos v. City, 129 Ill. App., 471.
Indiana—Central Indiana R. Co. v. Wishard, 104 N. E., 593.
Kansas—-“The court could not take judicial notice of the ordinances * * .and none was pleaded or proven. Sullivan v. Darratt, 83 Kan., 799.
Louisiana—Will not take judicial notice of ordinances. State, ex rel, v. Mayor, 139 La., 195; Rudison v. Glover, 131 La., 382; Burke v. Iricalli, 124 La., 774.
*556 New York—Milton S. & Co. v. Grigsby, 199 N. Y., 577, affirming 132 App. Div., 584; Grimmer v. Tenement, etc., 205 N. Y., 549; People v. Ahern, 124 App. Div., 840; Collenden v. Reardon, 138 App. Div., 738; New York v. Seely, etc., 149 App. Div., 98; Tucker v. O’Brien, 117 N. Y. S., 1010; Daly v. O’Brien, 60 Misc., 423; Sachs v. Lyon, 53 Misc., 640; Berry v. Urban, W., etc., Co., 148 N. Y. S., 67.
Oklahoma—Cunningham v. Ponca City, 27 Okla., 858.
Virginia—N. & P. Tr. Co. v. Forrest, 109 Va., 658.
Wisconsin—State v. Koch, 138 Wis., 27.
Action—False Imprisonment—“The ordinance was not mentioned in the pleading. * * * The obligations of courts are sufficiently burdensome when they are required to take cognizance of all acts creating and granting powers to municipal corporations. They have uniformly refused to take judicial notice of the acts and ordinances of such bodies except upon due proof. And the introduction of such an ordinance in evidence, when not pleaded, against objections, is error.” Stittgen v. Rundle, 99 Wis., 78.
Wyoming—Slutsman v. Cheyenne, 18 Wyo., 499.
It seems unpardonable to support such a fundamental and immemorial rule en masse by regiments and divisions in these days when reforms in opinions are being so strongly urged. But the G-ermanic form of attack seems the only way to convince and reform habitual breakers of rules.
Text-books uniformly announce and support the rule that courts will not take notice of city ordinances, stating that they must be pleaded and proved as facts. Bliss Plg., Section 186; Goodrich v. Brown, 30 Iowa, 291; Potter v. Waring, 69 N. Y., 250; 12 Colo., 94; 41 Mich., 403; 17 Wis., 26; 8 Ia., 286; 56 Ind., 305; 23 Minn., 305; Pomeroy Code Rem., page 684, note.
Maxwell Plg., page 89, states:
‘ ‘ Ordinances of a city or village must be pleaded as facts, and it is not sufficient to refer to them by the title and the date of its passage.”
Phillips Pig., page 344), states:
“Courts, excepting those of the particular municipality, do *557 not take judicial notice of municipal ordinances; and where such ordinance is relied upon, except in the municipal courts, it must be alleged and proved.”
Booth on Street Railways, Section 259, on which work the writer spent about two years or so of his young life, states:
“Although a valid statute or ordinance limiting the rate of speed is admissible in evidence, its existence and violation should first be pleaded, and an averment that the car was running at a high rate of speed, contrary to law, or to the provisions of a statute or ordinance, is not an allegation of the existence of the ordinance. ’ ’
Some years spent in digesting thousands of cases and writing upon the subjects of pleading and trial procedure, together with fully twenty years in law school teaching thereon, has somehow impressed the writer that it is a duty of courts to uphold and enforce well sanctioned rules. But some ten years of activity in judicial experience, however, has almost caused complete despair concerning the matter of proper and uniform enforcement of the rules of Pleading and Procedure. As the common law procedure degenerated into looseness and abuses, thus giving rise to the code system, so are the loose methods of the bar and bench now calling for reform either in the system or on the part of the bench and bar.
No one can successfully question the wisdom of the rule that courts shall not take judicial notice of municipal charters and ordinances. We no longer can look into our Revised Statutes to see what the fundamental law of the city of Columbus is. We must send our bailiffs to the city hall, where they may find an old dirty copy of the municipal charter laying around loose somewhere. We can never be certain of the municipal law of Columbus, except by calling the city clerk to bring into court a desired ordinance, and to have him specifically inform us whether a given ordinance is in force, and that it is the one applying to the case, and the only one on the subject.
The prime purpose and object of pleading being to definitely and certainly give notice to the adversary of the precise nature *558 and ground of a cause of action complained of, the force of the rule requiring a plaintiff to state with definiteness and precision the particular ordinance and section thereof in his petition, becomes readily apparent. Pleading the ordinance and the particular part thereof carries definite notice and knowledge to the defendant of the claim he is to meet. ILe is not then surprised at trial.
These fundamental rules have never been denied by any decision in the state. Their importance and necessity of strict compliance therewith is augmented by the decision in Schell v. DuBois, 94 O. S., 93, to the effect that violation of an ordinance is a prima facie act of negligence. Now more than ever is there urgent necessity for enforcing the rule.
We have stated that it has never been expressly decided in Ohio that it was error prejudicial to a plaintiff for a trial court to sustain an objection to the introduction of a municipal ordinance, when its breach is relied upon by plaintiff as the gist of his cause, and where the same has not been pleaded.
Counsel’s complaint, leads us to remark that the question was not merely momentarily considered in Mr. G-ilhooley’s case. Our study of it was made annually for twenty years in teaching, as well as frequently in course of judicial duty. Our mind was so saturated with the rule requiring ordinances to be pleaded, that we momentarily went astray by denying admission of an ordinance in evidence offered by a defendant to show that a plaintiff had been guilty of negligence in failing to drive his team in accord with its provisions. In Schasberger v. Columbus Railway & Light Company, in this court, ease No. 58452, the question of refusal to admit in evidence on behalf of defendant, was presented on motion for new trial, the verdict being set aside for error in refusing to admit the ordinance. We made the following statement in the opinion in that case:
“When the action is founded upon the ordinance or if the cause of action does spring from the violation of an ordinance, then its provisions must be set forth in the pleading by the plaintiff. Judd v. Ry., 23 Mo. App., 56; City v. Johnson, 78 Mo., 661. *559 But if the action is not founded upon the ordinance and the same furnishes no cause of action, it is the rule that it is not necessary to plead it. In such case the existence of the ordinance is merely a fact bearing upon the conduct of the party charged with negligence, and whether or not he was guilty of negligence depends upon the facts bearing upon his action. One of those facts may be the provisions of an ordinance which contains provisions as to the standard of duty required. Robertson v. Ry., 84 Mo. App., 119; Riley v. Ry., 18 Mo. App., 385.
This is precisely the doctrine of the Meek ease, as we will show.
Attention has been directed to comment by Newman, J., in Variety Iron Company v. Poak, 89 O. S., 297, 309, of the decision in Meek v. Pennsylvania, 38 O, S., 632; also by Johnson, J., in Schell v. DuBois, 94 O. S., 93, 105. Newman, J., states that plaintiff (Meek) did not predicate his right of recovery upon the violation of the ordinance; that no reference was made to it in the petition, the charge being that the company carelessly, wrongfully and with gross negligence ran and moved its cars. Johnson, J., states: “No reference whatever was made to the ordinance in the petition. ’ ’
It does not affirmatively appear in the report of the Meek case that no reference was made to the ordinance. The action being for death by wrongful act, and contributory negligence of the deceased being an issue, it clearly appears that Johnson, J., in the Meek ease, justified reception of the ordinance as evidence on account of its relevancy to that issue. It does not expressly appear that defendant pleaded contributory negligence. On the contrary, the language of the court indicates that plaintiff’s own evidence raised the issue. Attention is called to the fact that the deceased was injured while he was working on the railroad track; that he was charged with active duties for his own preservation, omission to perform which contributed to the injury.
“His action in going upon the track immediately preceding the injury, put in question his due exercise of care for his own safety. In such a case the burden is on the plaintiff to show that he exercised such care. ’ ’
*560 Johnson, J., then states that the deceased had the right to act upon the assumption that the railway company would conform to the requirements of the ordinance.
“It was the duty of the deceased, if he went on defendant’s track, to look out for approaching trains, and the violation of the ordinance by the railroad agent would not relieve him from that duty; but in the absence of apparent danger, the deceased may not have been guilty of contributory negligence, if he was lulled into security by knowing of the regulation prescribid by the ordinance and by assuming that the company tvould exercise such care. * * *

“This ordinance was admissible as reflecting upon the question of the care exercised by the deceased in view of the fact that the defendant was guilty of an act forbidden by an ordinance which he had no reason to mvticipaie.”

Therefore correct analysis of the Meek ease clearly differentiates it from the one at bar, and fully demonstrates that the court placed its conclusion upon the issue of contributory negligence raised on plaintiff’s own evidence, the burden of disproving which was on him, which in the opinion of the court could be done by proof of the ordinance, and plaintiff’s knowledge of its provisions and reliance upon compliance with its terms by the railroad company.
It is, therefore, fully demonstrated that the plaintiff was not founding his cause of action upon a violation of an ordinance, which is the attitude of plaintiff in the present ease.
The rule is universal that when plaintiff relies upon the violation of an ordinance, as the gist of the cause of action, he must allege it in the petition and prove it as a fact.
But a defendant who relies upon compliance with the terms of an ordinance to show neglect of a plaintiff, need not plead it, because its provision and his conduct are mere facts which may be shown under a denial.
A decision that it is not prejudicial *to a defendant to admit an ordinance in evidence, though not alleged in the petition, is not a conclusion that rejection of an ordinance offered by plaintiff, to prove part of his cause of action, because he did not plead *561 the same, constitutes error prejudicial to the plaintiff against whom verdict is rendered.
It is significant that Johnson, J., gave this as the first consideration in holding it to be error in not admitting the evidence. It is significant that only secondary significance was given the ordinance as affecting defendant’s negligence.
It has never been held prejudicial to plaintiff to reject an ordinance as evidence where it is relied upon to show negligence of a defendant, when plaintiff has failed to plead the same. Until it is held to be error prejudicial to plaintiff, to enforce him 'to comply with a rule of pleading, and until the settled rule of pleading has been expressly repudiated, it is the duty of the trial judge to enforce the same.
It seems unpardonable to have spent so much time on the question of admissibility of the ordinance. It would not have been done but for the injured attitude assumed by the counsel and knowledge of breaches of the rule.
It is unusual to give so much attention to a case so simple, with such little foundation, but counsel has seemed to take the matter so much to heart that the court thought it would endeavor to persuade him that it had done its duty. Lawyers owe serious duties to the -profession, to the law, to the judiciary. Counsel surely understands his duty and obligations as a lawyer. He must know that he can not select the judge before whom his eases are to be tried or adopt indirect means designed to accomplish that purpose. It is more becoming to take the rulings, save the exceptions and pursue the remedies in a firm and independent attitude and test out the questions.
Motion for a new trial overruled ;• judgment of dismissal.